In the Matter of the WELFARE
OF M. D. B.

No. C2–99–207.

Court of Appeals of Minnesota.

Oct. 5, 1999.

William E. McGee, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for appellant M.D.B.

Mike Hatch, Attorney General, St. Paul, and Amy Klobuchar, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for respondent.

Considered and decided by RANDALL, Presiding Judge, KALITOWSKI, Judge, and SCHUMACHER, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant M.D.B. contends the district court erred by determining that the gun found in M.D.B.'s possession was not the product of an illegal search.

## FACTS

On May 23, 1998, appellant, who was 16 years old and riding a bicycle, ran a stop sign and turned the wrong way down a one-way street nearly hitting a squad car. The uniformed officer in the squad car testified that after swerving to avoid appellant, he got out of the car and told appellant he was going to give him a ticket for running the stop sign. The officer testified that he was concerned that appellant might flee the scene because appellant: (1) seemed nervous; (2) was looking around as if to find an escape route; and (3) had no identification. The officer therefore decided to secure appellant in his squad car.

The officer led appellant to the squad car to search him before putting him in the car. The officer testified that just before beginning the weapons search, he asked if appellant had any weapons on his possession and appellant then started flailing his arms and yelling that he did not want the officer to beat him. The officer said he put appellant in a bear hug to subdue him, and in the ensuing scuffle a gun from appellant's waistband was tossed towards the grass.

On June 11, 1998, appellant moved to suppress the gun as the product of an illegal search. The district court denied the motion concluding the officer had a reasonable basis to detain appellant to prevent him from committing a further criminal act by fleeing on his bike. The district court also found that because appellant revealed the gun to the officer by his own actions, there was no search.

## ISSUE

Was the gun found in appellant's possession the product of an unlawful search?

## ANALYSIS

■ When this court reviews a pretrial order suppressing evidence and the district court's decision is a question of law, "the reviewing court may independently review the facts and determine, as a mat-

ter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992) (citations omitted).

## I.

An officer may conduct a limited protective weapons frisk of a lawfully stopped person if the officer has an objective articulable basis for thinking that the person may be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 24, 27, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A frisk is improper during a routine stop for a minor traffic violation absent additional suspicious or threatening circumstances. *State v. Varnado*, 582 N.W.2d 886, 890 (Minn.1998). But a search incident to misdemeanor arrest or detention is permissible if it is reasonably apparent to an officer that it is necessary: (1) to prevent injury to the accused or to third parties; (2) to prevent further criminal acts; or (3) there is a substantial likelihood that the accused will fail to respond to the citation. Minn. R.Crim. P. 6.01; *State v. Martin*, 253 N.W.2d 404, 405–06 (Minn.1977). Examples of factors that might justify a search include situations where:

> (a) a motorist is known by the police to be habitually armed or to have a record of assaultive behavior, or
>
> (b) a motorist assumes a hostile and threatening attitude when stopped, or
>
> (c) the police, after stopping a motorist, by cursory observation and without a search have valid reason to believe the motorist is engaged in the commission of a more serious crime.

*State v. Curtis*, 290 Minn. 429, 437, 190 N.W.2d 631, 636 (1971).

In *Varnado*, the supreme court considered the Curtis factors and concluded the police officer did not have a reasonable belief that the defendant may be armed and dangerous, and therefore a frisk for weapons was not justified. 582 N.W.2d at 890–91. The court further stated that no alternative factors supporting a frisk were present. *Id.* at 891. Here, the district

court distinguished *Varnado*, finding appellant had a heightened opportunity to flee and was acting nervously at the time of the stop.

Appellant contends the district court erred by determining the officer's decision to search appellant was reasonable. We agree. The officer testified that he was concerned that appellant might flee because he seemed nervous and was looking side to side, possibly looking for an escape route. But when confronted by an armed, uniformed officer in a squad car with flashing lights, it is not unusual for a person to appear nervous. *See* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 9.4(f) at 180 & n.209 (3d ed.1996) (stating that it is common for people dealing with police officers to be nervous, even if they are innocent of any wrongdoing). And nervousness alone does not justify a search for weapons. *See State v. Harris*, 590 N.W.2d 90, 100–01 (Minn.1999) (concluding that officers who boarded a bus did not have reasonable articulable suspicion to search a defendant, noting that the behavior the officers were looking for, including looking around to see if police were present and appearing nervous, "could be consistent with the activities of any multitude of innocent persons"); *State v. Martinson*, 581 N.W.2d 846, 851–52 (Minn.1998) (nervousness was but 1 of 16 articulable facts that in their totality amounted to reasonable suspicion).

The officer also stated that appellant's lack of identification made him suspicious. But the inability of a minor traffic violator to produce a driver's license is not a reasonable basis to require the driver to sit in the back of a squad car. *Varnado*, 582 N.W.2d at 891. Moreover, appellant was a juvenile riding a bicycle who was not required by law to have a driver's license or other identification.

Appellant was stopped for the minor traffic offenses of failing to obey a stop sign and turning the wrong way on a one-

way street. The officer testified that: (1) he did not see a gun or any evidence that appellant might have a weapon; (2) appellant made no furtive gestures or uncooperative remarks; and (3) appellant could not have walked away. Thus the officer did not have a reasonable suspicion that appellant was armed and dangerous and therefore the search was not justified under *Terry.*

■ The search was also not justified under Minn. R.Crim. P. 6.01. The officer did not testify that he had reason to believe that securing appellant was necessary to prevent injury or that there was a substantial likelihood that appellant would fail to respond to a citation. We reject respondent's contention that under rule 6.01 the officer could reasonably detain appellant to prevent him from obstructing legal process by fleeing. If the possibility of flight was a "further criminal act" under the rule, the police could justify detention after any minor traffic stop. Such a result violates the Fourth Amendment guarantees outlined in *Terry. See Terry,* 392 U.S. at 8–9, 88 S.Ct. at 1873. We thus conclude that the possibility that an individual will flee the scene of a minor traffic offense is not an adequate justification to detain someone under rule 6.01.

■ Respondent contends that under *Varnado:* (1) an officer may place someone in the back of a squad car if there is a "reasonable basis" for that decision; and (2) that when an officer has a valid reasonable basis for placing a lawfully stopped citizen in a squad car, a frisk will often be appropriate without additional individual articulable suspicion. *See Varnado,* 582 N.W.2d at 891. But the court in *Varnado* also stated that a frisk is improper unless "some additional suspicious or threatening circumstances are present." *Id.* at 890. To allow a weapons search in the absence of *any* threatening circumstances is a dramatic departure from the long-standing holding in *Terry.* Thus, we conclude that "reasonable basis" means either a reasonable suspicion that the person is armed

and dangerous or the existence of other circumstances that pose a threat to the officer. *See id.* at 890, 887–88 (concluding that because the officer "did not have a reasonable basis to suspect that Varnado might be armed and dangerous, the frisk for weapons was not justified," and noting in the syllabus that a police officer may not frisk a motorist for weapons "unless some additional suspicious or threatening circumstances are present supporting a reasonable basis to believe that the motorist may be armed and dangerous"). *See also U.S. v. Glenn,* 152 F.3d 1047, 1049 (8th Cir.1998) (stating that "[a]n officer's decision to place a traffic offender in the back of a patrol car does not create a reasonable, articulable suspicion to justify a patdown search that the circumstances would not otherwise allow"). Because additional suspicious or threatening circumstances did not exist in this case to justify detention in the squad car, we conclude a protective weapons search was not justified.

Finally, as in *Varnado,* the factors cited in *Curtis* were not present here: (1) the officer was not familiar with appellant or any prior criminal history he might have had; (2) appellant did not assume a hostile or threatening attitude when he was stopped; and (3) the officer had no reason to believe appellant was engaged in the commission of a more serious crime at the time of the stop. Respondent contends that under *Varnado* the possible risk of flight is an appropriate "alternative factor" that provides a reasonable basis for search and detainment. We disagree. Respondent has cited and we have found no cases allowing a protective weapons search absent any evidence that a person was armed and dangerous or otherwise posed a threat to an officer's safety. Thus, absent further guidance from the supreme court, we cannot conclude that possible risk of flight is an "alternative factor" that allows detention and a weapons search. Therefore, we conclude the district court erred by not suppressing the evidence obtained during the attempted search.

## II.

 Appellant contends the district court also erred by determining the gun was not discovered as a result of a search. We agree. Evidence that is abandoned because of an officer's improper actions may be suppressed. *See State v. Dineen*, 296 N.W.2d 421, 422 (Minn.1980) (officer did not have probable cause to search defendant, therefore the contraband abandoned by defendant because of the search was properly suppressed at trial); *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn.1993) (where defendant abandoned cocaine after he was illegally stopped, the abandonment was the suppressible fruit of the illegality); *State v. Slifka*, 256 N.W.2d 90, 91 (Minn.1977) (officers did not have probable cause to search passenger in a car, therefore the marijuana defendant tried to abandon because of the search was properly suppressed at trial). We conclude that because the gun here was abandoned as a result of the officer's attempt to conduct an improper search, the evidence should have been suppressed.

### DECISION

The police officer's concern that appellant posed a possible risk of flight did not justify a Terry search absent any evidence that appellant was armed and dangerous or other threatening circumstances. The district court erred in denying appellant's motion to suppress evidence discovered as a result of the attempted search.

**Reversed.**

SCHUMACHER, Judge (dissenting)

I respectfully dissent. I believe the majority opinion misconstrues the issue and that, contrary to the majority's conclusion, the facts amply justified the Terry frisk.

Generally, the lawfulness of a Terry frisk turns simply on whether the officer had a reasonable belief that the suspect was armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). Although it is possible that an officer could have a reasonable belief that a bicyclist acting nervous and looking ready to flee is armed and dangerous, I believe we need not reach that issue.

This is not a case where the lawfulness of the frisk rests simply on whether the suspect might be armed and dangerous. Rather, under *State v. Varnado*, 582 N.W.2d 886 (Minn.1998), assessing the legality of the frisk in this case requires a two-step process: (1) determining whether there was a reasonable basis for placing M.D.B. in the back of the squad car; and (2) deciding whether that act justified the precaution of a Terry frisk.

The supreme court in *Varnado*, quoting a 1971 decision, essentially decided the second issue:

> "We are not to be understood as holding that the police have no right, for their own protection, to search a person before placing him in a squad car if there is a valid reason for requiring him to enter the vehicle and it is not merely an excuse for an otherwise improper search."

*Id.* at 891 (quoting *State v. Curtis*, 290 Minn. 429, 437, 190 N.W.2d 631, 636 (1971)). The court in *Varnado* explicitly found there was no "reasonable basis for requiring Varnado to wait in the squad car." *Id.* They did not hold, as the majority appears to assume, that there is *never* a reasonable basis to require *any* minor traffic violator to sit in the squad car.

Here, M.D.B. was so nervous and so plainly prone to flight that the officer had to confine him somehow merely to finish writing the citation. As there was no other officer present to assist, the only alternative was to place M.D.B. in the back of the squad car. Placing M.D.B. in the squad car was not merely an excuse to frisk.

The majority concludes that risk of flight is not a factor indicating a suspect is armed and dangerous. This may very well be, although an officer could conclude, based on experience, that many suspects

appear eager to flee *because* they are (illegally) armed or *in addition to* being dangerous. *Varnado* does not hold that the only relevant consideration is the risk a suspect is armed and dangerous. *Varnado* plainly allows a frisk, for officer safety, if there is a "reasonable basis" for placing the suspect in the squad car. *Id.* The court's own language closes the door to any other conclusion:

Nonetheless, we agree that officer safety is a paramount interest and that when an officer has a valid reasonable basis for placing a lawfully stopped citizen in a squad car, a frisk will often be appropriate without additional individual articulable suspicion.

*Id.*

This language cannot be ignored. The majority erroneously concludes that police here needed more than a reasonable basis to put M.D.B. in the squad car in order to frisk him. Accordingly, I would affirm the district court.