STATE of Wisconsin, Plaintiff-Respondent,†

v.

Robert F. HART, Defendant-Appellant.

Court of Appeals

*No. 00–1444–CR. Submitted on briefs November 8, 2001.— Decided November 21, 2001.*

2001 WI App 283

(Also reported in 639 N.W.2d 213.)

† Petition to review denied 2-19-02.

330

On behalf of the defendant-appellant, the cause was submitted on the brief of *Jon Deitrich* of *Hynes & Associates, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark A. Langholz,* assistant district attorney.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. BROWN, P.J. What we face in this case is an inebriated citizen whom an officer decided he would not arrest but could not safely release on the streets either. A protective frisk for weapons produced not a weapon

but a marijuana pipe. The State contends the existence of probable cause for operating a vehicle while intoxicated (OWI) by itself is enough to justify the search, and the subsequent arrest was a mere formality. We agree there are circumstances when, based upon probable cause, an arrest is inevitable and therefore it is a mere formality whether arrest comes before or after the search. In this case, however, no arrest was going to occur at the time of the search. Therefore, we hold that the search was not a valid search incident to arrest. Because the pat-down was unconstitutional, the denial of the motion to suppress is reversed as far as the conviction for possession of drug paraphernalia is concerned. This court affirms a related conviction for operating while intoxicated, second offense, because that charge is not sufficiently connected to the illegal pat-down.[1]

¶ 2. The facts in this case are not disputed. Robert F. Hart was stopped for speeding and suspicion of driving while intoxicated. Tests conducted at the scene, including a breath test, indicated that Hart was in fact intoxicated. Nevertheless, the officer exercised his discretion not to arrest Hart for OWI but to instead drive Hart to the police station where he could call for a ride home. Prior to placing Hart in the squad car, the officer initiated a pat-down pursuant to police department policy. Hart then reached into a pocket and threw an object into the grass. The officer retrieved a marijuana pipe, which Hart admitted belonged to him. At that

[1] This was originally a one-judge appeal and a brief on behalf of the State was filed by the district attorney. After this case was made a three-judge appeal, the attorney general filed a supplemental brief. Thus, in referring to the State's arguments, we will note whether the argument comes from the attorney general or the district attorney.

336

point, the officer arrested Hart for possession of drug paraphernalia, handcuffed him and placed him in the squad car. The officer testified that he also arrested Hart for OWI either right before they left the scene or right after. At a hearing on Hart's motion to suppress the drug paraphernalia evidence, the trial court found that Hart was under arrest at the time of the search and that the pat-down was a lawful search incident to arrest.[2] After the motion was denied, Hart pled guilty.

¶ 3. On appeal, Hart argues that the search cannot be justified as a search incident to arrest because there is no nexus between the fruits of the search and the probable cause used to justify the arrest. In other words, there was no basis for a search for evidence of the only crime then apparent, operating a vehicle while intoxicated. In a supplemental brief, the attorney general contends that so long as probable cause existed prior to the search and a formal arrest immediately followed, it is irrelevant that the search preceded the arrest. Alternatively, the district attorney argues that the drug paraphernalia is admissible either as the result of a limited *Terry*[3] search or on the theory that Hart abandoned the pipe voluntarily.

¶ 4. When reviewing an order granting or denying a motion to suppress evidence, we will uphold a trial court's findings of fact unless they are clearly erroneous. *State v. Secrist*, 224 Wis. 2d 201, 207, 589 N.W.2d 387 (1999), *cert. denied*, 526 U.S. 1140 (1999). However, deciding whether a search is unreasonable under the

---

[2] Judge Arnold K. Schumann heard and decided the motion to suppress. Judge Mark S. Gempeler presided at the change of plea hearing and sentencing.

[3] *Terry v. Ohio*, 392 U.S. 1, 24 (1968).

337

Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution is a question of law we review de novo. *State v. Betterley*, 191 Wis. 2d 407, 415–16, 529 N.W.2d 216 (1995).

¶ 5. Both sides use the case of *State v. Swanson*, 164 Wis. 2d 437, 475 N.W.2d 148 (1991), to support their positions. There, Swanson was stopped for erratic driving and suspicion of driving while intoxicated. *Id.* at 442. Before placing Swanson in the squad car to take field sobriety tests, the officer performed a pat-down search and discovered marijuana on him. *Id.* Swanson was then arrested, handcuffed and placed in the back of the squad car. *Id.* at 442–43. The supreme court concluded that upon stopping Swanson for erratic and dangerous driving, the officer had detained him for only investigatory purposes as part of a routine traffic stop. *Id.* at 447–48. The court concluded that a reasonable person in Swanson's position, where he was merely asked to perform field sobriety tests, was not told he was under arrest, was not given *Miranda*[4] warnings and was not handcuffed, would not have believed that he or she was under arrest or in legal custody prior to the search. *Swanson*, 164 Wis. 2d at 448.

¶ 6. *Swanson* reiterated the test used to determine whether a person is under arrest. The test is "whether a reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint under the circumstances." *Id.* at 446–47. If a person is not under arrest, it follows that a resultant pat-down may not be justified as a search incident to arrest.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶ 7. Using the *Swanson* analysis, this court determines that the trial court was in error when it justified the pat-down based upon its conclusion that a reasonable person in Hart's position would have considered himself or herself under arrest because Hart was "not free to go." As Hart points out, the officer undisputedly told Hart that he was not under arrest and that he would be free to go home after he arranged for a ride. As this court views the undisputed evidence, both the officer and Hart understood that the officer had decided not to arrest him. Instead, the officer was acting as a "caretaker" to Hart by providing him with a safe means to arrive home. We conclude that any reasonable person in Hart's position would not have thought himself or herself to be under arrest.

¶ 8. The attorney general points out that what defeated the State in *Swanson*, the failure to arrest Swanson on charges for which they had probable cause, is present in this case and therefore the search is constitutional even though it preceded formal arrest. Furthermore, the attorney general argues, the officer's subjective reasons or motivation for the search are not binding on the court. *See State v. Mata*, 230 Wis. 2d 567, 574, 602 N.W.2d 158 (Ct. App. 1999). So long as probable cause existed, it should make no difference to the validity of the search if the officer did not intend to arrest Hart at the time of the pat-down. As we discuss below, we reject this reasoning because it fails to take into account the traditional concerns underlying the search incident to arrest cases.

¶ 9. An examination of the search incident to arrest cases reveals that the underpinning to these holdings is the circumstances that exist at the time of

arrest. *See United States v. Robinson*, 414 U.S. 218, 234–35 (1973); *Chimel v. California*, 395 U.S. 752, 762–63 (1969). Warrantless searches incident to custodial arrest are traditionally justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into custody. *United States v. Edwards*, 415 U.S. 800, 802–03 (1974). Such exigent circumstances may exist even where the offense is relatively insignificant because "the defendant may use deadly force to escape [as] he fears the officer knows or may later discover that he is wanted for a much more serious crime." 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.1(b), at 443 n.60 (3d ed. 1996). Furthermore, the search may precede the arrest so long as the fruits of the search were not necessary to support probable cause to arrest. *Swanson*, 164 Wis. 2d at 450–51.

¶ 10. Exigent circumstances arise, therefore, because of the reasonable belief under which a police officer operates at the time of arrest. As the Supreme Court noted in *Cupp v. Murphy*, 412 U.S. 291 (1973):

> Chimel stands in a long line of cases recognizing an exception to the warrant requirement when a search is incident to a valid arrest. The basis for this exception is that when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession. . . .
>
> Where there is no formal arrest, as in the case before us, a person might well be less hostile to the police and less likely to take conspicuous, immediate steps to destroy incriminating evidence on his person. Since he knows he is going to be released, he might be likely instead to be concerned with diverting attention away from himself.

340

*Id.* at 295–96 (citation omitted). This language assumes that when a reasonable police officer and defendant believe that arrest is inevitable, they will act as such. The subjective intent of the police officer as a reasonable person would understand it is the driving force in these situations. When the officer acts upon his or her belief that an arrest is going to be made, and communicates that belief by words or action to the defendant, then the exigent circumstances come into play.[5] The defendant will be more likely to conceal evidence or escape or use violence when the defendant feels arrest

[5] The attorney general cites to language in *State v. Mata,* 230 Wis. 2d 567, 574, 602 N.W.2d 158 (Ct. App. 1999), for the proposition that an officer's subjective reasons for a search or arrest are irrelevant to the validity of the search or arrest. Actually, the circumstances in *Mata* reinforce the point we are making. In *Mata,* we held that so long as a police officer has probable cause, it does not matter whether, at the time of the search, the officer thinks he or she is searching pursuant to a limited *Terry* frisk or incident to arrest. *Mata,* 230 Wis. 2d at 574. In that case, the officer had probable cause from the moment he smelled marijuana emanating from the car. *Id.* at 572–73. The central point, for purposes of our discussion, is that from the moment he had probable cause, the officer in *Mata* conducted himself the way a reasonable officer would in the course of making an arrest, including gathering evidence to support the arrest. We find compelling the language of Justice Traynor in *People v. Simon,* 290 P.2d 531 (Cal. 1955):

> [I]f the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . . there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest.

*Id.* at 533. In our case, unlike in *Mata,* the officer was entitled to make an arrest but chose not to; therefore, it was no longer reasonable to conduct himself as if an arrest was imminent.

is imminent. In such situations, the arrest itself is truly a mere formality; it was going to happen anyway and the prearrest search is justified by the concerns expressed in *Cupp*.

¶ 11. What happens, however, when the police officer does not intend to make an arrest? Here, it is clear there was no intent on the part of the police officer to search Hart incident to the inevitable formal arrest for OWI. Indeed, although there may have been probable cause, both parties were operating under the assumption that no arrest would occur. Therefore, none of the concerns that justify prearrest searches would come into play. The police officer had no reasonable belief that Hart would be motivated to conceal evidence or harm the officer.

¶ 12. On this interpretation of the facts and the case law, the attorney general cannot successfully argue that the subjective intent of the police officer is irrelevant. His intent not to arrest as he communicated it by words and deeds removed the *Cupp* concerns which traditionally justify the search as incident to arrest. We determine with respect to the formal arrest for drug paraphernalia, which occurred after the pipe was discovered, probable cause rests entirely on the pipe itself, which as fruit of an unlawful search must be suppressed.

¶ 13. We turn now to whether the pipe evidence may nonetheless be admissible as the result of a limited *Terry* search for weapons. The lawfulness of a *Terry*

---

Indeed, by his own testimony, he was not acting as a reasonable officer would in the course of making an arrest; he was simply acting as a caretaker.

frisk turns on whether the officer had a reasonable belief that the suspect was armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 24 (1968). The reasonableness of a protective frisk is determined based upon an objective standard. That standard is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety and that of others was in danger." *Id.* at 27. Wisconsin courts apply this standard in light of the totality of the circumstances. *State v. Richardson*, 156 Wis. 2d 128, 139, 456 N.W.2d 830 (1990). Among the factors to consider are the time of day, the high-crime nature of the area, and the defendant's nervousness. *See State v. Morgan*, 197 Wis. 2d 200, 211–15, 539 N.W.2d 887 (1995).

¶ 14. Some states have found that the "need to transport a person in a police vehicle in itself is an exigency which justifies a pat-search for weapons." *People v. Tobin*, 269 Cal. Rptr. 81, 85 (Cal. Dist. Ct. App. 1990); *accord State v. Lombardi*, 727 A.2d 670, 674 (R.I. 1999). In a recent Wisconsin Supreme Court decision, however, a plurality of the justices expressly declined to extend *Terry* to a police officer's general concern for safety whenever the officer transports a citizen in a police car. *State v. Kelsey C.R.*, 2001 WI 54, ¶¶ 50, 91, 243 Wis. 2d 422, 626 N.W.2d 777.

¶ 15. In *Kelsey C.R.*, police officers spotted Kelsey sitting alone after dark in a high-crime neighborhood. *Id.* at ¶ 1. After a brief discussion, the officers asked Kelsey to "stay put" while they approached her. *Id.* Kelsey fled; the officers chased and eventually caught her. *Id.* The officers contacted Kelsey's mother who asked them to bring her home. *Id.* at ¶ 6. Before placing her in the squad car, a female officer conducted a pat-down search for weapons and discovered a loaded handgun. *Id.* at ¶ 7. The State petitioned for a deter-

343

mination that Kelsey was delinquent based on her possession of a dangerous weapon. Kelsey moved to suppress the evidence, claiming lack of reasonable suspicion for the investigative detention. *Id.* at ¶ 8.

¶ 16. The supreme court identified three issues. One, did the police officers seize Kelsey when they told her to "stay put" but she ran away? Two, was the investigative detention after she fled based on a reasonable suspicion that she had committed, was committing, or was about to commit a crime? Three, was the pat-down search of Kelsey based on a reasonable suspicion that she may be armed and dangerous? *Id.* at ¶ 11. Apparently, all of the justices agreed that the officers did not seize Kelsey by telling her to "stay put." *Id.* at ¶ 33.[6] The plurality held that the subsequent investigative stop was reasonable under *Terry*. *See Kelsey C.R.*, 2001 WI 54 at ¶ 43. Finally, the plurality concluded that the same facts which justified the stop after the police chase also justified the frisk: namely, Kelsey's flight, her demeanor, the time of night and the neighborhood.[7] *Id.* at ¶ 49.

---

[6] The plurality relied on *California v. Hodari D.*, 499 U.S. 621, 626 (1991), to hold that in order to effect a seizure, an officer must make a show of authority, and the citizen must actually yield to that show of authority. *State v. Kelsey C.R.*, 2001 WI 54, ¶ 33, 243 Wis. 2d 422, 626 N.W.2d 777. Because Kelsey did not yield to the officer when he told her to "stay put," no seizure occurred until the officers caught her after she fled. *Id.* Neither the concurring or dissenting opinions disagreed with this portion of the plurality's decision.

[7] The concurring justices agreed that there was reasonable suspicion for the stop, but disagreed with the plurality's determination that the facts justified the pat-down because of insufficient evidence that Kelsey was armed and dangerous. *Kelsey C.R.*, 2001 WI 54 at ¶ 52. Instead, the concurring

¶ 17. The plurality specifically refused to adopt a blanket rule that a police officer may frisk a person just because the officer is going to place that person inside a police vehicle. *Id.* at ¶ 50. The two dissenting justices agreed that the so-called "search incident to squad car ride" exception was not consistent with Fourth Amendment case law requiring specific and articulable facts to support reasonable suspicion that a person may be armed and dangerous. *Id.* at ¶ 91. With five members of the court declining to adopt a per ser rule, the law in Wisconsin is that the need to transport a person in a police vehicle is not, in and of itself, an exigency which justifies a search for weapons.

¶ 18. In light of the supreme court's rejection in *Kelsey C.R.* of a "search incident to a squad car ride" exception, more specific and articulable facts must be shown to support a *Terry* frisk. *Morgan*, 197 Wis. 2d at 209. The record in this case offers no specific or articulable facts that would make a police officer reasonably fear for his or her safety. This was a routine traffic stop; it is not like those cases where an officer has confronted a person who is acting nervous or uncooperative, who is in a high-crime area late at night, or who has companions in the car. We conclude that the marijuana pipe may not be admissible as the result of a *Terry* search.

¶ 19. Before continuing this opinion, we must note that a routine pat-down of a person before a police officer places the person in a squad car is wholly

justices would have justified the search based upon the need to transport Kelsey in the squad car, a need independent of any suspicion that she might be armed and dangerous. *Id.* at ¶ 54.

reasonable. We recognize that police policy mandates pat-downs for the general safety of the officer. Nevertheless, evidence gleaned from such a search will only be admissible in court if there are particularized issues of safety concerns about the defendant.

¶ 20. The district attorney offers an alternative argument, one joined in by the attorney general. He contends that the marijuana pipe was not the result of a pat-down at all, but rather was the result of a voluntary act of abandonment by Hart. In other words, the district attorney asserts that the causal chain between the illegal search and the evidence sought to be excluded was broken by Hart's voluntary act.

■■

¶ 21. Hart objects to the district attorney being able to make this argument on appeal when he did not argue it before the trial court. But we acknowledge that this court may affirm a conviction on a theory not raised by the State in the trial court. *State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App. 1985). We will therefore address this issue.

¶ 22. The district attorney correctly cites cases holding that a warrantless seizure of property whose owner has abandoned it does not violate the Fourth Amendment. *State v. Bauer*, 127 Wis. 2d 401, 407, 379 N.W.2d 895 (Ct. App. 1985). The district attorney has also cited *California v. Hodari D.*, 499 U.S. 621 (1991), for the proposition that a person who throws something to the ground as he or she is being approached by the police will be deemed to have voluntarily abandoned it. But the district attorney has cited no case holding that when a person throws something to the ground "during" an illegal pat-down, it is a "voluntary" abandonment of property which is admissible in court.

¶ 23. We note there is a line of cases which views unlawful resistance to an unconstitutional stop as an intervening illegal act which can allow admissibility of evidence. Thus, if a defendant's response to an illegal pat-down " 'is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime' and any evidence uncovered by a search incident to that arrest is admissible against the defendant." *United States v. Crump*, 62 F. Supp. 2d 560, 568 (D. Conn. 1999) (citation omitted). This line of cases will not help the State in the instant case because it is clear that Hart was not engaging in any separate criminal activity when he threw the marijuana pipe to the ground. The pipe was not thrown as a part of separate activity, but as a result of the illegal pat-down itself.

¶ 24. Our own research has uncovered cases that are fatal to the district attorney's contention. In *Lawrence v. Henderson*, 478 F. 2d 705, 708 (5th Cir. 1973), the court held that drug evidence found in a police car after an unlawful arrest could not have been voluntarily abandoned because the "abandonment" was compelled by the police misconduct. Two Indiana cases have concluded that where an improper frisk forced the defendant to abandon drugs, the evidence was not admissible. *See Swanson v. State*, 730 N.E.2d 205, 210 (Ind. Ct. App. 2000), *transfer denied by* 741 N.E. 2d 1253 (Ind. Sept. 5, 2000); *State v. Pease*, 531 N.E.2d 1207, 1210–12 (Ind. Ct. App. 1988); *cf. In re Welfare of M.D.B.*, 601 N.W.2d 214, 218 (Minn. Ct. App. 1999) (where during course of illegal frisk defendant's gun fell to the ground, such evidence was suppressed), *review denied* (Jan. 18, 2000).

¶ 25. We conclude that Hart acted in response to the illegal pat-down. There was no distinct, separate

crime or intervening illegal activity which attenuated the link between the discovery of the marijuana pipe and the illegal search. Therefore, the district attorney's abandonment theory cannot stand under these facts.

¶ 26. We must now impose an appropriate remedy. The pipe must be suppressed as the fruit of an illegal search. Hart also demands suppression of the chemical test of his blood because it was gathered after the pat-down. However, the officer had enough evidence to arrest Hart for OWI before the pat-down. It was *that* evidence which caused the officer to seek a chemical test of Hart's blood.

¶ 27. Fruit of the poisonous tree jurisprudence requires courts to decide whether the new evidence is gained by means sufficiently distinguishable from the illegal conduct in order to be purged of the primary taint brought about by the illegal activity. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963). One of the most fundamental questions to be asked in the analysis is what is "the purpose and flagrancy of the official misconduct?" *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). The poisonous fruit rule is an exclusionary rule designed to prevent the government from using evidence that is gained by illegal conduct. In any analysis, we must mark the point of diminishing returns of the deterrence principle inherent in the exclusionary rule. 5 LaFave, Search and Seizure, § 11.4(a), at 235 (3d ed. 1996). Here, the chemical test for blood, gathered after the pat-down, was the anticlimatic result of evidence gathered by the officer before the pat-down. In other words, the pat-down did not serve as a springboard for a prosecution that could not have taken place but for the illegal activity. We hold that the chemical evidence was gained as a result of evidence standing

apart from the illegal conduct. Therefore, to exclude it would go beyond the deterrence principle discussed in *Wong Sun*.

¶ 28. This court concludes, therefore, that the denial of the motion to suppress is reversed in part. Upon remand, the trial court is directed to enter an order vacating the conviction for possessing drug paraphernalia and an order suppressing the marijuana pipe as evidence to be used in any subsequent prosecution for that charge along with any statements connected to that charge. The conviction for OWI, second offense, is affirmed.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.