State of Wisconsin, Plaintiff-Appellant,
v.
Dawn M. Filtz, Defendant-Respondent.
No. 04-0324-CR.
Court of Appeals of Wisconsin.
Opinion Filed: August 25, 2004.
¶1 SNYDER, J.[1]
The State of Wisconsin appeals an order suppressing all evidence obtained in an investigation of a hit-and-run incident involving Dawn M. Filtz. The trial court held that the evidence must be suppressed as a result of a Fourth Amendment violation, specifically, a warrantless entry into Filtz's home. The State contends that the evidence should not have been suppressed. We reverse the order of the trial court and remand for further proceedings.

FACTS
¶2 On August 27, 2002, the Village of East Troy Police Department was called about a hit-and-run accident in the parking lot of the East Troy House. Officer Karen Barnett was dispatched to investigate the accident. At the East Troy House, employees notified the officer that they observed an intoxicated patron, Filtz, leave the establishment, stumbling as she left. Fifteen minutes after Filtz left, employees observed damage to a bus in the parking lot. The employees stated that Filtz drove a black truck and that the color of paint of Filtz's vehicle matched the paint that Barnett found on the ground. Pieces from a truck's or van's taillight were also located at the scene.
¶3 Barnett went to Filtz's home to investigate and Deputy Jeffrey Shaw met her there. Both observed Filtz's truck parked in the driveway and observed damage on the vehicle consistent with the reported accident. Barnett and Shaw also observed, through the home's window, Filtz lying on the couch. After knocking on the door for five minutes, Filtz's son, approximately sixteen years old, answered the door. Barnett asked to speak with Filtz and the son went to wake her, leaving the door to the home open. He returned, saying he could not wake her and Barnett told him that she really needed to speak with Filtz. Filtz's son stated he would try to wake Filtz again. At that time, Filtz's son again left the door open and the officers followed him inside to the living room.
¶4 The officers attempted to wake Filtz and were successful. They explained to her that they were investigating a hit-and-run accident that had just occurred and asked if she had been driving that evening. Filtz responded that she had not and the officers asked her to come outside and look at her vehicle with them. Filtz agreed to go outside, and the officers followed her out to her vehicle. The officers did not inform Filtz that she was under arrest, put any handcuffs on her, or physically escort her outside.
¶5 Filtz and the officers observed the damage to the vehicle and Filtz once again denied that she had been driving. After further questioning, she admitted that she had been driving and that she had obviously hit something with her vehicle. Barnett asked Filtz to perform field sobriety tests, which she did. Barnett then placed Filtz under arrest for operating a motor vehicle while intoxicated and transported her to the hospital for a blood draw. At the hospital, Filtz refused to give a blood sample and a forced blood draw was taken.

PROCEDURAL HISTORY
¶6 The State charged Filtz with one count of operating a motor vehicle while under the influence of an intoxicant, second offense, contrary to WIS. STAT. §§ 346.63(1)(a) and 346.65(2)(b), and one count of operating a motor vehicle with a prohibited alcohol concentration, contrary to § 346.63(1)(b). Filtz filed a motion to suppress evidence obtained as a result of an illegal entry into her home. An evidentiary hearing was held on February 12, 2003, with additional testimony on May 21 and August 28, 2003. The trial court then granted Filtz's motion to suppress all evidence found inside and outside the home. However, the court held that the results of the blood test taken at the hospital would be admissible at trial.
¶7 At the December 11, 2003 status hearing, the trial court partially reversed its earlier ruling, finding that all evidence obtained, including the hospital blood test results, was subject to suppression. The State appeals.

STANDARD OF REVIEW
¶8 We employ a two-step standard when reviewing a trial court's conclusions concerning constitutional challenges. See State v. Phillips, 218 Wis. 2d 180, 190, 577 N.W.2d 794 (1998). We will not upset a trial court's findings of evidentiary or historical facts unless they are contrary to the great weight and clear preponderance of the evidence. Id. Our review of a constitutional fact on the grounds of established historical fact, however, is de novo. State v. Turner, 136 Wis. 2d 333, 344, 401 N.W.2d 827 (1987).

DISCUSSION
¶9 The State concedes that the police entered Filtz's home without consent. However, we are not bound by any party's concession on a matter of law. See State v. Gomaz, 141 Wis. 2d 302, 307, 414 N.W.2d 626 (1987). Therefore, we will review the issue of whether officers illegally entered Filtz's home.
¶10 A third person can give consent to search a premises when he or she has actual authority or apparent authority. See State v. Kieffer, 217 Wis. 2d 531, 548, 577 N.W.2d 352 (1998). Courts must determine whether "the information available to the police officers at the time of the search would justify a reasonable belief that the party consenting to the search had the authority to do so." Id.
¶11 A minor child may "reasonably possess the authority to consent to a search, or to consent to police entry of a parent's home." State v. Tomlinson, 2002 WI 91, ¶31, 254 Wis. 2d 502, 648 N.W.2d 367.
Whether the child possesses such authority will depend on a number of factors, and courts must look at the totality of the circumstances to make such a determination. The primary factors to be considered are the child's age, intelligence, and maturity, and the scope of the search or seizure to which the child consents. To a lesser extent, the court should also consider the extent to which the child has been left in charge, and the extent to which the parent has disclosed his or her criminality to the child.
Id. (citations omitted).
¶12 It will be presumed that an older child will be trusted with more responsibility. See id., ¶32. Additionally, the more limited the scope of the search or seizure, the more likely it is that a child can give consent to enter the home. See id. This is especially true when the entry is granted into "a common area of the home where the parents and the child share a greater mutual use and a similar expectation of privacy." Id. Further, consent does not have to be expressly given; consent can be nonverbal through gestures or conduct. Id., ¶37.
¶13 In the present case, Filtz and her son presumably shared the same use and expectations of the common areas of the home. The officers observed Filtz sleeping on the couch in the living room of Filtz's home, an area commonly shared by all members of a household. When the officers knocked at the door, and the sixteen-year-old son appeared at the door, the officers asked the son to wake the mother. Only when he could not wake Filtz, and he had left the door of the home wide open for the officers, did the officers follow the son to the living room and enter the home. Their entry was absent any objection by the son and was not without adequate waiting on their part. The son's gesture of turning and leaving the door open could reasonably be interpreted as consent to enter the home. Given the age and maturity of the son and the consent, and the limited scope of the entry, we conclude that the officers' warrantless entry of the home was constitutional.
¶14 We next review the issue of whether Filtz was in custody when the officers questioned her in her home. The trial court held that Filtz was in custody when the officers entered the home. The test for whether a defendant was in custody is an objective one. See State v. Pounds, 176 Wis. 2d 315, 321, 500 N.W.2d 373 (Ct. App. 1993). The relevant inquiry is "whether a reasonable person in the [suspect's] position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances." State v. Mosher, 221 Wis. 2d 203, 211, 584 N.W.2d 553 (Ct. App. 1998) (citation omitted).
¶15 In determining whether a person is in custody, this court must consider the totality of the circumstances, including factors such as the suspect's freedom to leave; the purpose, place and length of the interrogation; and the degree of restraint. State v. Morgan, 2002 WI App 124, ¶12, 254 Wis. 2d 602, 648 N.W.2d 23 (citing State v. Gruen, 218 Wis. 2d 581, 594, 582 N.W.2d 728 (Ct. App. 1998)). Whether a person is in custody is a question of law that this court reviews de novo. See Mosher, 221 Wis. 2d at 211.
¶16 Under the totality of the circumstances, we conclude that Filtz was not in custody when the officers first met with her in her residence and asked her to come outside. While in her home, they told her they were investigating a hitand-run accident and that there was damage to her vehicle. The officers asked if Filtz would step outside with them to look at her vehicle. Filtz acquiesced and all three went outside to examine the vehicle. At no time during this encounter was Filtz placed in handcuffs, told she was under arrest, physically escorted out of her home, or coerced into leaving her home. There is no indication in the record that Filtz or her son asked the officers to leave the residence, nor did Filtz indicate that she did not want to speak with the officers. Under the totality of the circumstances, a reasonable person would not have considered himself or herself to be in custody.
¶17 Filtz argues that her voluntary consent to search was not sufficiently attenuated from the illegal entry into the home under the "fruit of the poisonous tree" doctrine.[2]See State v. Trecroci, 2001 WI App 126, ¶46, 246 Wis. 2d 261, 630 N.W.2d 555 (citing State v. Phillips, 218 Wis. 2d 180, 204, 577 N.W.2d 794 (1998)). However, the attenuation question is a nonissue because there was no illegal entry into the home. The trial court stated that the officers had every right to go to Filtz's property in the absence of a no trespassing sign. Since the officers had third-party consent to enter the home granted by Filtz's sixteen-year-old son, there was no unconstitutional entry. If there was no illegal conduct, it does not matter whether evidence obtained outside the home is distinguishable from evidence obtained inside the home. See State v. Hart, 2001 WI App 283, ¶27, 249 Wis. 2d 329, 639 N.W.2d 213 ("The poisonous fruit rule is an exclusionary rule designed to prevent the government from using evidence that is gained by illegal conduct.").
¶18 Considering the totality of the circumstances, the investigation by the officers was reasonable and appropriate. The officers had reasonable suspicion to investigate the accident, authority to examine the vehicle outside the home, reasonable suspicion to question Filtz, and consent to enter the home. Further, they did not restrain Filtz nor did they cause her to be unduly questioned. When the officers asked Filtz to step outside to examine the vehicle and perform field sobriety tests, only upon her failing the tests did the officers place her under arrest.

CONCLUSION
¶19 We conclude that Barnett and Shaw were acting within their authority to investigate the hit-and-run accident and that they had consent to enter Filtz's home. Their entry into the home was neither unlawful nor unconstitutional. Further, we conclude that Filtz was not in custody while inside her home, or outside her home when inspecting her vehicle. She was not placed in custody until the officers had probable cause to arrest her. Therefore, the evidence obtained in the investigation should not have been suppressed. We reverse and remand for further proceedings.
By the Court.  Order reversed and cause remanded.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] "Fruit of the poisonous tree jurisprudence requires courts to decide whether the new evidence is gained by means sufficiently distinguishable from the illegal conduct in order to be purged of the primary taint brought about by the illegal activity." State v. Hart, 2001 WI App 283, ¶27, 249 Wis. 2d 329, 639 N.W.2d 213.