*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1536**

State of Minnesota,
Respondent,

vs.

Patrick Lamar Mobley,
Appellant.

**Filed September 8, 2015
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-13-18867

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Sydney Hull, Certified Student Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Joel O'Malley, Special Assistant Public Defender, Dorsey & Whitney, L.L.P., Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from a conviction of felony possession of a firearm by a prohibited person, appellant argues that his conduct was not sufficient to support a reasonable, articulable suspicion that he was armed and dangerous, and, therefore, the evidence discovered during a pat search for weapons should have been suppressed. We affirm.

## FACTS

Minneapolis police officers were investigating liveability crimes, which include nuisance violations and street-level narcotics offenses, in the Grant Street and Nicollet Avenue neighborhood. Officer Matthew Kipke put out a call to cite a person for interfering with vehicular traffic. Kipke provided the person's physical description and reported that the person had gotten into the front passenger seat of a maroon sport utility vehicle (SUV).

Responding to the call, officers Efrem Hamilton and Chao Lee saw the SUV parked illegally, pulled up behind it, and activated the squad car's lights and siren. There were two people in the SUV, the driver and a person, later identified as appellant Patrick Lamar Mobley, in the front passenger seat. Hamilton saw Mobley look back quickly and duck down. It appeared to Hamilton that Mobley was reaching underneath the seat or somewhere down below. Hamilton testified:

> Q. When you saw those movements, did it make you think of anything?
> A. Yes, it did.
> Q. And what was that?
> A. Someone going to get a gun.

Lee approached the driver's side of the vehicle, and Hamilton approached the passenger side. Hamilton described Mobley as appearing "to be pretty nervous," moving his hands and continuously looking back toward Lee. Mobley appeared to be trying to gauge the amount of time it would take Lee to reach the SUV. Hamilton became "pretty suspicious on why [Mobley] was so concerned about Officer Lee and his position." When Hamilton got to the SUV, he slapped the rear passenger window to get Mobley's attention. Mobley "snapped around real quick and looked at [Hamilton]" and "began moving his hands around, mostly his right hand but he kept his hands down." Hamilton twice told Mobley to open the window, but Mobley did not comply and instead kept watching the officers. Mobley "seemed really nervous and panicky." Eventually, the passenger window came down, but Hamilton did not see who opened it.

Hamilton told Mobley to put his hands on his lap where Hamilton could see them and stop moving around. Mobley did not pay attention to Hamilton and instead appeared to be trying to listen to the conversation between Lee and the driver. Mobley's failure to comply with Hamilton's instruction to put his hands on his lap caused Hamilton to become concerned for his safety. Hamilton asked Mobley to step out of the SUV and instructed him to put his hands on his chest where Hamilton could see them. Mobley got out of the SUV but kept his hands at his sides and expressed frustration with Hamilton's instruction. Mobley had a tense jaw and an angry look on his face. Mobley was holding a belt in his right hand, and Hamilton had seen a belt used as a weapon.

Hamilton handcuffed Mobley to pat-search him for a weapon. Hamilton explained that he believed that Mobley possessed a weapon

3

[b]ecause of the movements that he was making in the car. He wasn't listening to what I was telling him to do. When he got out of the car, he was concerned with stepping toward me that he faced toward me, which I took he was going to fight, when he started looking off my shoulder side, which is the opening where he would have been able to leave, appeared that he was ready to take flight and try to get away. And . . . I was concerned for my safety and . . . why he didn't want to turn his back to me. He wanted to basically control the way that I observed him.

Hamilton found a handgun in Mobley's pants pocket. Mobley, who has prior convictions of carrying a pistol without a permit and first-degree aggravated robbery, was brought to the police station. After Mobley was given a *Miranda* warning and stated that he understood his *Miranda* rights, he made a statement to police, in which he admitted that the gun belonged to him.

Mobley was charged with one count of felony possession of a firearm by a prohibited person. Mobley moved to suppress the gun and his statement to police. The district court concluded that the gun was admissible because it was discovered as the result of a legal search and seizure. The district court determined that Mobley was seized when the officers activated the squad car's lights and sirens behind the SUV and that Hamilton reasonably expanded the scope of the seizure. The court explained:

When approaching the SUV to issue the citation, Officer Hamilton described [Mobley's] movements and body language as suspicious and testified that he thought [Mobley] could be reaching for a gun. [Mobley] appeared panicky and did not obey Officer Hamilton's commands to keep his hands where they could be seen. [Mobley] became angry once he was asked to step outside the vehicle and acted as if he was preparing to flee. [Mobley] held a belt, and Officer Hamilton testified belts have been used to cause injury. The Court concludes that Officer Hamilton had a reasonable articulable

4

suspicion that [Mobley] presented a threat to officer safety. Therefore, Officer Hamilton reasonably expanded the scope of the seizure by removing [Mobley] from the vehicle, handcuffing him, and conducting the limited protective pat-down search for weapons.

The district court also determined that Mobley voluntarily waived his *Miranda* rights and, therefore, his statement to police was admissible.

The parties submitted the case to the district court for decision on stipulated facts. The district court found Mobley guilty and sentenced him to an executed prison term. This appeal followed.

## D E C I S I O N

In reviewing a pretrial order denying a motion to suppress evidence, this court independently reviews the facts to determine whether, as a matter of law, the district court erred in its ruling. *State v. Jackson*, 742 N.W.2d 163, 168 (Minn. 2007); *see also In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997) (stating that de novo review applies to reasonable-suspicion determination). But we review the district court's factual findings for clear error and defer to its credibility determinations. *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012).

Both the United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless search is unreasonable unless it falls under a recognized exception to the warrant requirement. *State v. Lemert,* 843 N.W.2d 227, 230 (Minn. 2014).

> The Supreme Court of the United States recognized one such exception in *Terry v. Ohio,* in which it held that a law-enforcement officer may conduct a protective pat search of a

5

> person's outer clothing so long as the officer has a reasonable, articulable suspicion that the person whom the officer has lawfully detained may be armed and dangerous.

*Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 26-27, 88 S. Ct. 1868, 1882-83 (1968)).

The reasonable-suspicion standard is not high but requires something more than a mere "inchoate and unparticularized suspicion or hunch." *State v. Timberlake,* 744 N.W.2d 390, 393 (Minn. 2008) (quotations omitted). An officer "must articulate a particularized and objective basis" supporting the suspicion. *Id.* (quotation omitted). Appellate courts "consider the totality of the circumstances when determining whether reasonable, articulable suspicion exists." *State v. Flowers,* 734 N.W.2d 239, 251 (Minn. 2007). We "evaluate whether a reasonable, articulable suspicion exists from the perspective of a trained police officer, who may make inferences and deductions that might well elude an untrained person." *Lemert,* 843 N.W.2d at 230 (Minn. 2014) (quotation omitted).

Mobley argues that under *In re M.D.B.*, Hamilton lacked a reasonable, articulable suspicion that Mobley might be armed and dangerous. 601 N.W.2d 214 (Minn. App. 1999), *review denied* (Minn. Jan. 18, 2000). In *M.D.B.*, an officer stopped the defendant, a 16-year-old boy riding a bicycle, for running a stop sign and turning the wrong way down a one-way street nearly hitting the squad car. *Id.* at 215. The officer testified that he was concerned the defendant "might flee because he seemed nervous and was looking side to side, possibly looking for an escape route," and that the defendant was suspicious because he did not have identification. *Id.* at 216. In holding that the officer lacked a reasonable, articulable suspicion that the defendant might be armed and dangerous, this

court noted that the defendant did not make any furtive gestures or uncooperative remarks and did not assume a hostile or threatening attitude when stopped. *Id.* at 216-17. Mobley asserts that in *M.D.B.*, the defendant behaved in a hostile manner, flailing his arms and yelling that he did not want the officer to beat him; but that conduct was not part of the basis for the search as it occurred after the officer decided to conduct the search. *Id.* at 215.

In this case, in addition to appearing nervous, as the officers approached the SUV, Mobley reached under the seat in a manner that suggested to Hamilton that he was reaching for a gun and ignored Hamilton's instructions to put his hands on his lap, stop moving around, and open the window. When Mobley exited the SUV, he appeared angry, failed to comply with Hamilton's instruction to put his hands on his chest, and was holding a belt in one hand, which Hamilton knew could be used as a weapon. Mobley's behavior during the stop, including his failure to follow Hamilton's instructions, suggested to Hamilton that Mobley was preparing to fight or flee.

When the totality of the circumstances is considered, Mobley's conduct was sufficient to support a reasonable, articulable suspicion that he might be armed and dangerous, and, therefore, the pat search was legal. *See State v. Richmond*, 602 N.W.2d 647, 650-51 (Minn. App. 1999) (concluding that a pat search for weapons was justified when defendant made a "furtive movement" by reaching toward car's passenger compartment; was nervous, fidgety, and unable or unwilling to answer officer's questions; began reaching all over his body, jacket, and coat pockets when asked for driver's license; and appeared to be trying to decide whether to run after being removed

7

from car), *review denied* (Minn. Jan. 18, 2000); *see also State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (stating that evasive conduct is relevant to determining whether weapons search is justified); *State v. Curtis*, 290 Minn. 429, 437, 190 N.W.2d 631, 636 (1971) (stating that a suspect's hostile or threatening attitude is relevant to determining whether weapons search is justified). The district court did not err in denying Mobley's motion to suppress the gun.

Because the pat search was legal, we do not reach the issue of whether Mobley's statement to police should have been suppressed as the fruit of the poisonous tree.

**Affirmed.**