STATE of Wisconsin, Plaintiff-Respondent,

v.

Kavin K. NESBIT, Defendant-Appellant.†

Court of Appeals

*No. 2016AP224–CR. Submitted on briefs October 10, 2016.
—Decided August 9, 2017.*

2017 WI App 58

(Also reported in 902 N.W.2d 266.)

---

† Petition for Review Filed.

65

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Catherine R. Malchow*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Anne C. Murphy*, assistant attorney general.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

¶ 1. HAGEDORN, J.   This case concerns whether an officer's frisk of a citizen was supported by reason-

able suspicion. Kavin Nesbit and a friend were on I-94 in Kenosha County when they ran out of gas. With a red gas can in hand, they were walking along the shoulder of the expressway when State Trooper David Fowles activated his lights and pulled up behind them. Fowles later stated he pulled up out of concern for their safety and because walking along the highway is illegal.

¶ 2. After what both parties concede was "perfectly normal" conversation, Fowles told the men he would give them a ride to the gas station and back—an option that was more of a command than choice given he informed them walking on the expressway is illegal. Before the men entered the squad car, Fowles asked each if they had any weapons. Nesbit's friend indicated he had no weapons, and his demeanor remained unchanged following the question. Nesbit, however—who had earlier been talking, pointing, and otherwise unremarkable—"all of a sudden" became "very deflated" and shook his head slightly in the negative.

¶ 3. Fowles represented that it is department policy to frisk anyone who gets into a squad car. Thus, he planned to search both individuals no matter how they answered the questions. However, in light of Nesbit's noticeable change of attitude, Fowles chose to search him first. He ordered Nesbit to stand between him and his friend to mitigate any potential danger. The frisk revealed that Nesbit had a loaded gun on his left hip. Nesbit was later charged with one count of felon in possession of a firearm and one count of possession of tetrahydrocannabinol, second offense—for marijuana he later admitted he had on his person after being transported to the Kenosha County Jail.

¶ 4. Nesbit moved to suppress the fruits of the frisk on the grounds that it was not supported by

reasonable suspicion. The circuit court denied the motion, and Nesbit pled guilty to the firearm possession count with the marijuana possession count dismissed as part of the agreement. We hold that under the unique circumstances of this case, the officer had reasonable suspicion that Nesbit was armed and dangerous. Therefore, we affirm Nesbit's conviction. Additional facts are presented as relevant below.

## DISCUSSION

¶ 5.    The Fourth Amendment of the United States Constitution provides in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article 1, section 11 of the Wisconsin Constitution has been interpreted to provide identical protections. *State v. Dearborn*, 2010 WI 84, ¶ 14, 327 Wis. 2d 252, 786 N.W.2d 97. Our review of a challenge to the constitutionality of a search is de novo, but we rest our legal review on the circuit court's factual findings unless they are clearly erroneous. *Id.*, ¶ 13.

¶ 6.    Nesbit does not challenge Fowles' decision to stop Nesbit and his friend or the invasiveness of the frisk itself. Nesbit's challenge is limited to whether the decision to frisk itself complied with the Fourth Amendment. A protective frisk to search for weapons is considered reasonable under the Fourth Amendment if it is supported by "reasonable suspicion that a person may be armed and dangerous to the officer or others." *State v. Kyles*, 2004 WI 15, ¶ 7, 269 Wis. 2d 1, 675 N.W.2d 449. Reasonable suspicion is an objective in-

quiry rather than a subjective one. *Id.*, ¶ 10. Thus, the question is not whether the officer himself believed he or others may be in danger (although this is a relevant consideration), but whether a reasonably prudent officer " 'would be warranted in the belief that his safety and that of others was in danger' because the individual may be armed with a weapon and dangerous." *Id.*, ¶ 13 (citation omitted); *see also State v. Sykes*, 2005 WI 48, ¶ 33, 279 Wis. 2d 742, 695 N.W.2d 277 (holding that "the subjective intent of the officer (except for the facts that he knows) is not determinative of whether the search violates constitutional principles that prohibit unreasonable searches and seizures"). More than a hunch is necessary; a search must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Kyles*, 269 Wis. 2d 1, ¶ 9 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). It is the State's burden to show the search complied with the constitution. *See State v. Taylor*, 60 Wis. 2d 506, 519, 210 N.W.2d 873 (1973) ("Where a violation of the Fourth Amendment right against an unreasonable search and seizure is asserted, the burden of proof upon the motion to suppress is upon the state.").

¶ 7. Nesbit maintains that the protective pat down was conducted pursuant to department policy and not any particularized fear of safety. He specifically relies on our decision in *State v. Hart*, 2001 WI App 283, ¶¶ 17–18, 249 Wis. 2d 329, 639 N.W.2d 213, *overruled on other grounds by Sykes*, 279 Wis. 2d 742, ¶ 33,[1] holding that police transport alone is not a

---

[1] Our supreme court has clarified that any court of appeals cases decided prior to *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, 326 Wis. 2d 729, 786 N.W.2d 78, that have been

blanket exception to the requirement that reasonable suspicion support a decision to frisk for weapons. Thus, Nesbit maintains that Fowles needed an objectively reasonable suspicion to conduct a frisk for weapons. He insists that the facts here are wholly innocent and do not support reasonable suspicion. Walking on the side of a road with a gas can is not suspicious according to Nesbit, and Fowles never testified he was concerned for his safety. Nesbit further notes that it was light outside, and the encounter occurred on the expressway—not a high-crime area. The interaction itself was uneventful and unsuspicious, with no reason to think anyone should be concerned for their safety. Nesbit dismisses his change of countenance and the fact that there were two individuals to only one officer as insufficient to constitute reasonable suspicion that he might be armed and dangerous.

¶ 8.   The State emphasizes that the test is objective; Fowles need not testify he feared for his safety. And under that test, a single unprotected law enforcement officer transporting two individuals, one of whom had a sudden change in demeanor when asked about weapons, would have reason to believe his own safety was at risk.

■■■■

¶ 9.   As an initial matter, "we are not bound by an officer's subjective reasons for a search." *State v. Mata*,

---

overruled by the supreme court may be cited as precedent if the supreme court "utilized qualifying language" indicating the decision was only partially overruled. *State v. Stevens*, 2012 WI 97, ¶ 93, 343 Wis. 2d 157, 822 N.W.2d 79. *State v. Sykes*, 2005 WI 48, ¶ 33, 279 Wis. 2d 742, 695 N.W.2d 277, only overruled *State v. Hart*, 2001 WI App 283, ¶¶ 17–18, 249 Wis. 2d 329, 639 N.W.2d 213, to the extent the decision "could be interpreted to invalidate a search incident to an arrest for which arrest the officer has probable cause."

230 Wis. 2d 567, 574, 602 N.W.2d 158 (Ct. App. 1999). Thus, the fact that the search was going to happen anyway pursuant to department policy is not controlling. Rather, the question is whether the search itself was constitutionally permissible as an objective matter, not whether the officer was subjectively proceeding under a constitutionally permissible theory.

¶ 10. That said, this is a close case. Contrary to the State's suggestion, we find nothing suspicious about two men walking down the expressway with a gas can (illegal though it may be). Until the conversation turned to getting in the squad car, nothing was out of the ordinary or concerning. Essentially, this case comes down to one key fact and the rational inferences to be drawn therefrom in light of additional facts.

¶ 11. The key fact is Nesbit's response to the question of whether he had any weapons on his person. Fowles testified that Nesbit became "very deflated." Where before he was talking and pointing, his arms were now down at his side and "he shook his head to the negative just slightly." Fowles called it a "very, very different change in demeanor as compared to" his friend.

¶ 12. One who reacts to a question by quieting down, becoming deflated, and responding demurely does so for a reason. A reasonably prudent officer seeing this response to a question about weapons would be suspicious and wonder if the answer was truthful. It is well established that an abnormal nervousness or unusual response to interaction with law enforcement is a relevant factor in whether a person is armed and dangerous. *See State v. Morgan*, 197 Wis. 2d 200, 214–15, 539 N.W.2d 887 (1995). Moreover, possible deception or untruthfulness is also one of

many factors that may legitimately contribute to a reasonable suspicion. *See, e.g., United States v. Simpson*, 609 F.3d 1140, 1149 (10th Cir. 2010) (explaining that it is "noncontroversial" that "lies, evasions or inconsistencies about any subject while being detained may contribute to reasonable suspicion").

¶ 13.   It is clear from Fowles' testimony that he found Nesbit's response suspicious. While Fowles did not explicitly testify that he was fearful, he did take precautionary measures in choosing to search Nesbit first, and Fowles intentionally positioned him in a location that mitigated the danger. His testimony confirms he found Nesbit's response noteworthy, untrustworthy, and concerning—all reasonable conclusions based on reasonable inferences.

¶ 14.   Moreover, Fowles was by himself and was going to escort two individuals—at least one of whom Fowles had reason to believe was armed and may have just lied to him about that fact. With no protection from a second law enforcement officer and no bullet-proof glass separating Fowles from his passengers, a reasonably prudent officer would be concerned for his or her safety.

¶ 15.   Cases addressing this area of law are littered with deference toward law enforcement's safety concerns due to the unusually dangerous nature of the work. *See, e.g., State v. Beaty*, 57 Wis. 2d 531, 539, 205 N.W.2d 11 (1973) ("Police officers are not required to take unnecessary risks in the performance of their increasingly hazardous duties.").

> Where an officer reasonably believes that his safety may be in danger because the person he or she is investigating may be armed, 'it would appear to be clearly unreasonable to deny the officer the power to

take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'

*State v. Bridges*, 2009 WI App 66, ¶ 12, 319 Wis. 2d 217, 767 N.W.2d 593 (citation omitted). Even though Fowles was planning to search Nesbit anyway, we conclude his "search was justified by specific, articulable facts supporting an objectively reasonable suspicion" that Nesbit was armed and dangerous.[2] *Id.*, ¶ 23.

*By the Court.*—Judgment affirmed.

---

[2] To be clear, we are not announcing a bright-line rule that it is per se reasonable to conduct a frisk for weapons every time an officer escorts a person in his or her squad car. Our decision must be based on the unique facts and circumstances of this case. *See State v. Richardson*, 156 Wis. 2d 128, 143 n.5, 456 N.W.2d 830 (1990) (reasonable suspicion is "governed by the unique facts and circumstances of the given case").