COURT OF APPEALS
DECISION
DATED AND FILED

April 13, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1656-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF196

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JESSE E. BODIE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Reversed and cause remanded for further proceedings*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

¶1 KLOPPENBURG, J. Jesse E. Bodie appeals the judgment of conviction, entered upon his no contest pleas, of possession of a firearm by a felon and possession of methamphetamine. Bodie argues that the circuit court erred in

denying his motion to suppress evidence obtained when an officer with the Wisconsin State Patrol performed a frisk of Bodie's person before allowing Bodie to sit in the back of the officer's squad car.[1] Specifically, Bodie argues that the frisk was unlawful because the officer did not have reasonable suspicion that Bodie was armed and dangerous. Accordingly, Bodie argues, the evidence obtained from the frisk should be suppressed.

¶2 We agree with Bodie that, under the circumstances of this case, the officer did not have an objectively reasonable suspicion that Bodie was armed and dangerous. Therefore, we reverse the circuit court's denial of Bodie's motion to suppress and remand to the circuit court for further proceedings.

## BACKGROUND

¶3 The State charged Bodie with possession of a firearm by a felon and possession of methamphetamine following the frisk in January 2018. Bodie filed a motion to suppress the evidence obtained from the frisk.

¶4 The circuit court held a hearing on Bodie's suppression motion at which the officer who conducted the frisk testified. The following facts are taken from the officer's testimony, which the circuit court credited.

---

[1] A frisk, sometimes also referred to as a pat down, refers to "'measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" *State v. Kyles*, 2004 WI 15, ¶1 n.1, 269 Wis. 2d 1, 675 N.W.2d 449 (quoted source omitted); *State v. Nesbit*, 2017 WI App 58, ¶¶1, 3-4, 6-7, 378 Wis. 2d 65, 902 N.W.2dd 266 (using "pat down" and "frisk" interchangeably). Following our supreme court, we also sometimes refer to a frisk as a "protective search." *See Kyles*, 269 Wis. 2d 1, ¶1 (explaining that a "frisk" in this context is "a protective search for weapons during a routine traffic stop").

¶5    At approximately 11:03 p.m. on January 27, 2018, the officer was dispatched to a vehicle fire on Interstate I-94 in Dane County, Wisconsin. The officer arrived at the location of the vehicle fire around 11:30 p.m. and was the third officer on the scene. When the officer arrived, he observed the middle and right lanes of the three-lane interstate closed off and fire trucks and a burnt-out vehicle on the right shoulder of the interstate. The officer and the two other officers were preparing to open up the middle and right lanes to traffic since the vehicle fire had been put out.

¶6    As the lanes were opening up, the officer made contact with the driver of the vehicle, Bodie. Bodie informed the officer that a friend was on the way to give Bodie a ride from the interstate and that a tow truck was on the way to remove the vehicle. The officer's role was to wait on the scene with Bodie until Bodie's ride and the tow truck arrived. The two other officers remained at the scene during the officer's interaction with Bodie, and one of the other officers prepared citations that were provided to Bodie during that interaction. The red and blue lights on the officers' squad cars were on. The scene was "very dark, unlit" because there were no external lights, and it was approximately "30, 35 degrees … that night."

¶7    The officer and Bodie waited on the shoulder of the interstate and had a "laid back conversation" about Bodie's vehicle and where Bodie was headed that night. Then, because the interstate was dark and all the interstate lanes were opening back up to the 70-mph traffic, and the officer was trained that "the safest spot on the side of the Interstate is [in] your vehicle," the officer suggested that Bodie "have a seat in the back of [the officer's] squad car."

¶8     In response to the officer's suggestion that Bodie sit in the back of the squad car, Bodie said "I would rather not" and his demeanor "changed from laid back to a more serious tone." The officer found the response "odd given the temperature and the appearance that [Bodie] appeared to be cold." At the time of the conversation, Bodie had been standing outside for about one hour. The officer then "strongly urged" Bodie to have a seat in the back of his squad car and "explained the safety reasons." After the officer explained the safety reasons, Bodie agreed to sit in the back of the squad car to wait for his ride and the tow truck to arrive.

¶9     When Bodie agreed to sit in the squad car, the officer decided to conduct a frisk of Bodie's person. The officer conducted the frisk because: (1) Bodie's demeanor changed "to a more serious tone" when the officer suggested that Bodie sit in the squad car; (2) the officer interpreted Bodie's reluctance to sit in the squad car to be "odd" due the temperature outside and Bodie appearing to be cold; (3) Bodie's license was revoked for operating while intoxicated (OWI); and (4) Bodie had an outstanding, but non-servable, arrest warrant out of Indiana for operating without a license.

¶10    The officer conducted the frisk and located an object in the front of Bodie's waistband that felt like "the handle of [a] handgun." The officer asked Bodie a series of questions about the object and Bodie responded that the object was a gun, that Bodie did not have a concealed carry permit for the gun, and that Bodie was a felon. At that point, the officer handcuffed Bodie and then removed the handgun from Bodie's waistband. After searching Bodie further, the officer uncovered two plastic bags in the back right pocket of Bodie's pants, one containing a "green leafy substance" and the other containing six smaller bags with a "white crystal-like powder." The officer then arrested Bodie.

¶11    The State filed a criminal complaint charging Bodie with possession of a firearm by a felon and possession of methamphetamine, and Bodie filed a motion to suppress the evidence obtained from the frisk. The circuit court denied the motion. The court determined that the officer had reasonable suspicion that Bodie was armed and, thus, the frisk was lawful and the evidence that flowed from the frisk is admissible.

¶12    Bodie subsequently entered his no contest pleas and was convicted and sentenced. This appeal follows.

## DISCUSSION

¶13    The Fourth Amendment of the United States Constitution and article 1, section 11 of the Wisconsin Constitution protect individuals from unreasonable searches and seizures. *See State v. Nesbit*, 2017 WI App 58, ¶5, 378 Wis. 2d 65, 902 N.W.2d 266 ("Article 1, section 11 of the Wisconsin Constitution has been interpreted to provide identical protections [to the protections of the Fourth Amendment of the U.S. Constitution].")

¶14    When an appellate court reviews a circuit court's decision on the constitutionality of a search, it upholds the circuit court's findings of historical fact unless those findings are clearly erroneous. *State v. Dearborn*, 2010 WI 84, ¶13, 327 Wis. 2d 252, 786 N.W.2d 97. The application of constitutional principles to those facts is a question of law that the appellate court reviews de novo. *Id.*

¶15    A protective search for a weapon is reasonable under the Fourth Amendment if it is supported by "reasonable suspicion that a person may be armed and dangerous to the officer or others." *Nesbit*, 378 Wis. 2d 65, ¶6 (quoting *State v. Kyles*, 2004 WI 15, ¶7, 269 Wis. 2d 1, 675 N.W.2d 449). "The

reasonableness of a protective search for weapons is an objective standard." *Kyles*, 269 Wis. 2d 1, ¶10. Thus, the question is not whether the officer subjectively believed that the officer's safety or the safety of others was in danger, but whether a reasonably prudent officer under the circumstances "'would be warranted in the belief that [the officer's] safety and that of others was in danger' because the individual may be armed with a weapon and dangerous." *Nesbit*, 378 Wis. 2d 65, ¶6 (quoting *Kyles*, 269 Wis. 2d 1, ¶13).

¶16 For a search to be constitutional, more than an "unparticularized suspicion" or "hunch" is necessary. *Id.*, ¶9; *see also Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868 (1968). A search must be supported by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Kyles*, 269 Wis. 2d 1, ¶9 (quoting *Terry*, 392 U.S. at 21). As we have stated, there is no "bright-line rule that it is per se reasonable to conduct a frisk for weapons every time an officer escorts a person in [the officer's] squad car. Our decision must be based on the unique facts and circumstances of this case." *Nesbit*, 378 Wis. 2d 65, ¶15 n.2.

¶17 In determining whether a protective search is reasonable, a court may look "to any fact in the record, as long as it was known to the officer at the time [the officer] conducted the frisk and is otherwise supported by [the officer's] testimony at the suppression hearing." *Kyles*, 269 Wis. 2d 1, ¶10. It is the State's burden to show that the search complied with the constitution. *Nesbit*, 378 Wis. 2d 65, ¶6.

¶18 We now turn to the question of whether the totality of the circumstances supported an objectively reasonable suspicion that Bodie was armed and dangerous such that the frisk was constitutional. Based on the officer's

testimony, as credited by the circuit court, there were four factors that comprised the totality of circumstances regarding the officer's suspicion of a weapon in this case:  (1) Bodie responding in "a more serious tone" to the officer's suggestion that Bodie sit in the squad car; (2) the officer's interpretation of Bodie's reluctance to sit in the squad car as "odd" due the temperature outside and Bodie appearing to be cold; (3) Bodie's license being revoked for operating while intoxicated; and (4) Bodie's non-servable arrest warrant out of Indiana for operating without a license.[2]

¶19    We conclude that these factors, taken together, do not support a reasonable suspicion that Bodie was armed and dangerous because there is no reasonable inference connecting any of the factors to the possession of a weapon. Bodie responding in a "more serious tone" to the officer's suggestion that Bodie sit in the squad car, Bodie preferring to wait in the cold, Bodie's record of driving offenses, and Bodie's related non-servable arrest warrant, taken together, amounted, at most, to a hunch that Bodie may have had a not-innocent reason to stand outside until his ride and the tow truck arrived.   Such a hunch is constitutionally insufficient because it lacks any specific suspicion that Bodie "may be armed and dangerous to the officer or others" as is required to perform a protective search. *See Nesbit*, 378 Wis. 2d 65, ¶6.

¶20    The State argues that Bodie responding in a more serious tone to the officer's suggestion that Bodie sit in the squad car and Bodie's "odd" reluctance to wait in the back of the squad car when he appeared to be cold with temperatures in

---

[2] The parties do not dispute that the warrant could not be validly enforced by law enforcement in Wisconsin through an arrest of Bodie.

the mid-30s, together with his driving record and related non-servable arrest warrant showing that he was not, in the officer's words, "the most law-abiding citizen," gave the officer reasonable suspicion that Bodie was armed and dangerous. However, as we next explain, the case law that recognizes each factor separately as contributing to reasonable suspicion requires a connection between the factor, combined with other factors not present here, and being armed and dangerous. The State's argument fails because it does not show such a connection under the facts of this case.

¶21 The first and second factors, Bodie responding in a more serious tone when the officer suggested that he wait in the back of the squad car and Bodie's "odd" initial refusal to do so, may serve as a basis to support an officer's reasonable suspicion of a weapon: "It is well established that an abnormal nervousness or unusual response to interaction with law enforcement is a relevant factor in whether a person is armed and dangerous." *Nesbit*, 378 Wis. 2d 65, ¶12. The *Nesbit* court explained that "[o]ne who reacts to a question by quieting down, becoming deflated, and responding demurely does so for a reason" and a "reasonably prudent officer seeing this [sudden, deflated change in demeanor in] response *to a question about weapons* would be suspicious and wonder if the answer was *truthful*." *Id.*, ¶12 (emphasis added). Because "possible deception or untruthfulness" is another factor that may contribute to reasonable suspicion, Nesbit's sudden change in demeanor, when asked by the officer if he had any weapons, was an indication that his response may be untruthful and that he was therefore in possession of a weapon. *Id.*, ¶¶2, 12. This court in *Nesbit* considered the case before it a "close case" and emphasized that the "[t]he key fact is Nesbit's response to the question of whether he had any weapons on his person." *Id.*, ¶¶10-11.

8

¶22     The same inference that was made in *Nesbit* is not warranted here. Bodie's change in tone from "laid back" to "more serious" was in response to the officer's suggestion that Bodie sit in the back of the squad car. Unlike in *Nesbit*, Bodie's serious tone and reluctance were not tethered to any inquiry about a weapon. Rather, Bodie stated his preference to wait for his ride and the tow truck outside of the squad car. There was nothing about Bodie's serious tone and reluctance that could indicate untruthfulness or deception about being armed because Bodie was not asked about being armed. The general suspicion of some kind of unparticularized, illegal behavior by Bodie because he became more serious and showed reluctance about the prospect of sitting in the officer's squad car does not pass the constitutional threshold.

¶23     This is not to suggest that anything short of asking an individual a pointed question about whether the individual is carrying a weapon is per se insufficient. As the State notes, the court in *Nesbit* cited one case in which the conversation between the officer and the individual the officer decided to frisk did not concern a weapon. *Nesbit*, 378 Wis. 2d 65, ¶12 (citing *State v. Morgan*, 197 Wis. 2d 200, 214-15, 539 N.W.2d 887 (1995)). However, the rule that the *Nesbit* court derived from that case is "that an abnormal nervousness or unusual response to interaction with law enforcement is a relevant factor in whether a person is armed and dangerous." *Nesbit*, 378 Wis. 2d 65, ¶12. In *Morgan*, unusual nervousness was only one factor that contributed to the officer's suspicion, along with other factors including that Morgan was driving erratically in a car at 4 a.m. in a high-crime area. *Morgan*, 197 Wis. 2d at 204, 214-15. In *Nesbit*, the other factors included the defendant and his friend being found walking illegally on the side of the highway and having no option but to get in the squad car, and there being two individuals getting into the squad car with "a single unprotected law

enforcement officer" and with "no bulletproof glass separating [the officer] from his passengers." *Nesbit*, 378 Wis. 2d 65, ¶¶2, 8, 14. No similar additional factors exist here.

¶24 More specifically, unlike in *Nesbit*, in this case there were three officers and only one individual, Bodie, at the scene when the officer suggested that Bodie get in the squad car. Nor was there any evidence that there was no bullet-proof glass separating the officer from any passengers in the backseat. Bodie was also not engaged in any unlawful conduct when he was standing on the side of the highway talking with the officer while waiting for his ride and the tow truck to arrive. *See id.*, ¶10.

¶25 The *Nesbit* court also cited a second case in which the court determined that an individual's implausible travel plans were relevant to reasonable suspicion because "lies, evasions or inconsistencies about any subject while being detained may contribute to reasonable suspicion." *Nesbit*, 378 Wis. 2d 65, ¶12 (quoting *United States v. Simpson*, 609 F.3d 1140, 1149 (10th Cir. 2010)). However, the court in *Simpson* clarified that "minor evasions and inconsistencies would not constitute reasonable suspicion" on their own and that the court was reluctant to find suspicion "where the plan is simply unusual or strange because it indicates a choice that the typical person, or the officer, would not make." *Id.* at 1150, 1149. Similarly, while the officer here testified that he found Bodie's reluctance in response to the suggestion that Bodie sit in the squad car "odd given the temperature and the appearance that [Bodie] appeared to be cold," this does not reasonably lead to the inference that Bodie may be armed. Rather, Bodie's reluctance reflects his preference to wait outside instead of in the back of the squad car, and there were no additional circumstances that tethered that preference to a deception about the possession of a weapon.

10

¶26    An officer must have some kind of a link to the inference that an individual is specifically armed, stemming either from the conversation itself or other circumstances, as opposed to a general suspicion that an individual who does not want to sit in the back of a squad car is armed or dangerous. Nor is such an individual's preference to wait outside inherently abnormal or unusual. Bodie was entitled to be "odd" and prefer to stand where he was. *See, e.g.*, ***State v. Young***, 2006 WI 98, ¶73, 294 Wis. 2d 1, 717 N.W.2d 729 (acknowledging that "people may have the right to disregard the police and walk away without giving rise to reasonable suspicion") (citing ***Illinois v. Wardlow***, 528 U.S. 119, 125 (2000)). Most importantly, Bodie's conduct was not so "inexplicable," as the State argues, as to reasonably permit the inference that he was armed and dangerous. The inferential leap required in this case to suspect that Bodie was armed and dangerous because he became "more serious" in response to the prospect of sitting in the back of a squad car and preferred to wait outside in the cold is too great to be reasonable.[3]

¶27    As to the third factor, Bodie's previous conviction for operating while intoxicated, an arrest record may be used to support an officer's reasonable suspicion that an individual is armed and dangerous. ***State v. Buchanan***, 2011 WI 49, ¶13, 334 Wis. 2d 379, 799 N.W.2d 775. However, "an arrest record by itself would not, without more, support reasonable suspicion[.]" ***Id.*** The ***Buchanan*** court concluded that Buchanan's arrest record, which "includes a combination of violent crimes (armed robbery, false imprisonment and murder charges) and a

---

[3] The State does not argue and we do not see any basis to conclude that the following additional factors here contributed to reasonable suspicion that Bodie might be armed and dangerous: the scene was dark but not remote or in a high-crime area; Bodie's vehicle had caught fire; the officer was trained to frisk a person before the person gets into a squad car.

11

recent drug delivery arrest in a nearby county," paired with Buchanan's furtive motion observed by the officer "create[d] reasonable suspicion that the item Buchanan was seen putting under the seat or reaching to retrieve when pulled over could have been a weapon." *Id.*, ¶¶13, 18. Here, there is an insufficient connection between Bodie's driving record and the inference that he may be armed and dangerous. Unlike in ***Buchanan***, Bodie's driving offenses do not involve a weapon or violence, there was no evidence that Bodie was involved in any recent or nearby arrests, and Bodie made no furtive motion that could be connected with possession of a weapon or violence. There is no reasonable relationship between Bodie's driving record and the suspicion that he was, in the circumstances here, armed and dangerous.

¶28 As to the fourth factor, we acknowledge that Bodie's non-servable arrest warrant may be distinct from Bodie's record of driving offenses.[4] However, as we explain, the warrant stemming from driving without a license does not, based on the totality of the circumstances, provide a reasonable suspicion that Bodie possessed a weapon.

¶29 While related to Bodie's driving record, in that the warrant is for operating without a license, the existence of the warrant also indicates that, where servable, Bodie could be immediately arrested. *See* ***State v. Davis***, 2021 WI App 65, ¶33, 399 Wis. 2d 354, 965 N.W.2d 84 (explaining that an outstanding warrant relates to a court order that authorizes the person's arrest). The prospect of an arrest raises "the possibility of harm" to the arresting officers. ***State v. Denk***, 2008

---

[4] The State has not, either in the circuit court or on appeal, made an argument based on the non-servable warrant separate from Bodie's driving record. However, we consider the warrant separately for reasons explained in our analysis.

WI 130, ¶¶14-16, 46, 55, 315 Wis. 2d 5, 758 N.W.2d 775 (upholding a search incident to a subsequent arrest based in part on danger to the arresting officer, and citing *United States v. Robinson*, 414 U.S.218, 234 n.5 (1973)). Accordingly, in some situations an officer may reasonably suspect that a being in a squad car with a person with a warrant out for the person's arrest might be dangerous because the person might fear that the officer will try to arrest the person. However, the facts here do not establish that this is such a situation.

¶30 First, there is no basis for the officer to reasonably assume that Bodie knew about the non-servable arrest warrant. There is no evidence in the record regarding the date that the warrant was issued, how notice of the warrant was provided to Bodie, or Bodie's whereabouts since the warrant was issued. Second, even if the officer could reasonably assume that Bodie was aware of the warrant, there is no basis for the officer to reasonably assume that Bodie might fear that the officer would arrest him on the warrant if he got into the squad car. The officer testified that, when he arrived at the scene, he first met with the officers who had arrived before him and then with Bodie. He also testified that one of the other officers prepared the citations that were issued to Bodie. The officer testified that his role was to wait with Bodie until his ride and the tow truck arrived. Based on this testimony, it would not have been reasonable to suspect that Bodie feared being arrested on the warrant if he sat in the squad car, when neither the officer who issued him the citations nor the officer who had been talking with him had mentioned the warrant or arrested him on the warrant in the hour that he had been standing there.

¶31 Because the officer knew he could not arrest Bodie on the non-servable warrant, there is plainly no reasonable basis for the officer to believe that Bodie might endanger the officer in the course of, or in response to, such an arrest.

In addition, there is no reasonable basis for the officer to assume that Bodie might endanger the officer once in the squad car in anticipation of being arrested. That is, no objectively reasonable officer would believe that Bodie might endanger the officer due to the inchoate prospect of an arrest that the officer knew would not take place when: Bodie had so far been cooperative and congenial; none of the officers at the scene had mentioned the prospect of arresting him on the warrant; and, as discussed, no other factors contributed to a reasonable suspicion that Bodie might be armed and dangerous.

¶32    Thus, like Bodie's driving record, the non-servable arrest warrant stemming from driving without a license does not, alone, provide a reasonable suspicion that Bodie is armed and dangerous. Nor, as explained above, does this factor support such a reasonable suspicion under the totality of circumstances present here. *See State v. Fernandez*, No. 2010AP1394, unpublished slip op. (Oct. 12, 2011) (concluding that there were no particularized facts necessary to support an inference that a back-seat passenger in a vehicle might be armed and dangerous, so as to provide reasonable suspicion to frisk the passenger during a stop, noting that: the stop was not in a high-crime area; there was no connection between the stop and a criminal investigation; the passenger had just seen his sister who was a fellow passenger be arrested on a civil warrant for failure to pay a forfeiture; and there were three officers at the scene).[5]

¶33    In sum, each of the factors here—Bodie responding in a more serious tone to the officer's suggestion that Bodie wait in the back of the squad

---

[5] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

14

car, Bodie's preference to wait outside even though he was cold, Bodie's driving record, and the non-servable arrest warrant—may be valid considerations as to whether an officer has reasonable suspicion to frisk a person for a weapon. However, these factors, considered in the totality of circumstances present here, do not constitute the particularized facts that provide the link necessary to establish reasonable suspicion that this person was armed and dangerous. *See also* S*tate v. Johnson*, 2007 WI 32, ¶¶36, 38-41, 299 Wis. 2d 675, 729 N.W.2d 182 (concluding that officer lacked reasonable suspicion to believe defendant was armed and dangerous so as to support a frisk for weapons when defendant was stopped for a traffic violation for failure to signal a turn and made a "head and shoulders movement"; and distinguishing *State v. Williams*, 2001 WI 21, 241 Wis. 2d 631, 623 N.W.2d 106, and *State v. McGill*, 2000 WI 38, 234 Wis. 2d 560, 609 N.W.2d 795).

## CONCLUSION

¶34    For the reasons stated, we conclude that the circuit court erred in denying Bodie's suppression motion because the officer did not have objectively reasonable suspicion that Bodie was armed and dangerous so as to warrant a frisk.[6] Accordingly, we reverse and remand to the circuit court for further proceedings.

---

[6] Bodie argues that, because the frisk was unlawful, both "the gun and drugs [that the officer] discovered when unlawfully frisking Bodie, as well as all derivative evidence, should be suppressed." The State does not respond to this argument. Accordingly, we deem the State to have conceded that the relief requested by Bodie is appropriate. *See Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 ("An argument to which no response is made may be deemed conceded for purposes of appeal."). *See also State v. Kyles*, 269 Wis. 2d 1, ¶¶1, 72 (affirming court of appeals decision that affirmed circuit court order suppressing marijuana seized during an invalid frisk for a weapon in absence of reasonable suspicion that defendant was armed and dangerous).

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.

¶35    FITZPATRICK, J. (*dissenting*).   I respectfully dissent.

¶36    I begin with my agreements with the majority opinion analysis.  I concur with my colleagues in the majority that the first three factors discussed in the majority opinion do not form a basis to support a protective search of Bodie consistent with constitutional principles.

¶37    As to the first factor, the State is correct that case law holds that a change in a person's tone of voice while interacting with a law enforcement officer can, in some circumstances, be a relevant factor in determining whether a protective search is constitutionally valid.   However, that factor does not "legitimately contribute" to the analysis in this fact situation.  *See **State v. Nesbit***, 2017 WI App 58, ¶12, 378 Wis. 2d 65, 902 N.W.2d 266.  Bodie and the officer were standing a few feet from an interstate highway in the dark contending with the extremely loud noise of trucks and cars passing at 70 miles per hour (if not faster).  There is no reasonable view of the evidence that can lead to a finding that the officer was able to discern a subtle change in Bodie's tone of voice in that situation.  In fact, it is surprising that those two could hear each other at all.  The State's argument on the first factor fails for a lack of a factual basis and for the reasons stated in the majority opinion.  I also agree with the analysis in the majority opinion regarding the second and third factors.

¶38    But the fourth factor, the arrest warrant, makes all the difference.  A constitutionally valid basis to perform a protective search arose once Bodie

voluntarily agreed to get into the officer's vehicle, and it is at this point that my conclusions take a separate road from those of my colleagues.

¶39 The applicable principles concerning a constitutionally valid basis for a protective search of a person are ably stated in ¶¶13-17 and 29 of the majority opinion and need not be repeated here. It is sufficient to note that the issue regarding the fourth factor is whether a reasonably prudent officer interacting with Bodie would be reasonably warranted in the belief that the officer's safety would be in danger from Bodie while Bodie was in the officer's vehicle behind the officer. *See id.*, ¶6. And, because the officer was interacting with Bodie at the time, the reasonably prudent officer needed to make decisions about Bodie's knowledge of the circumstances as I next discuss.

¶40 At the time Bodie agreed to get into the back seat of the squad car, and while the officer and Bodie were outside the officer's vehicle, the officer knew that there was an arrest warrant for Bodie from the State of Indiana. Because the arrest warrant was "nonservable" (Majority, ¶18), the officer knew that he was not going to arrest Bodie based on the Indiana warrant. But the officer's knowledge about that aspect of the warrant is not dispositive concerning this fourth factor because a reasonably prudent officer would consider Bodie's state of mind about the arrest warrant. More specifically, a reasonably prudent officer would at that moment consider two separate questions about Bodie's state of mind. First, what is the likelihood that Bodie knows of the Indiana arrest warrant? If so, then second, what is the likelihood that Bodie believes he will be arrested by the officer based on the warrant? These questions must be considered by the reasonably prudent officer because some persons fight against an officer once the person realizes an arrest is imminent. As is noted in the majority opinion,

2

the prospect of an arrest raises the possibility of harm to the arresting officer. (Majority, ¶29).

¶41 In considering the two questions just mentioned, it must be kept in mind that the reasonably prudent officer needed to determine the answers to those questions, and their own safety, in the few seconds between when Bodie agreed to get into the squad car and the time the officer and Bodie walked up to the vehicle.

¶42 To repeat, the first question for the reasonably prudent officer was the likelihood that Bodie knew of the Indiana arrest warrant. I conclude that the reasonably prudent officer would decide that there was a substantial likelihood that Bodie knew of the arrest warrant. The experience of persons familiar with a court system, such as law enforcement officers, is that a defendant charged with a serious traffic violation, or crime, receives notices from the court about events in their case, and those notices are sent by the U.S. Mail. In those few seconds already described, a reasonably prudent officer would come to the conclusion that Bodie, like any other defendant, would have received notices about his pending case. And those notices would have included a notice about a warrant for Bodie's arrest. For those reasons, a reasonably prudent officer would determine that there was a substantial likelihood that Bodie knew of the Indiana arrest warrant.

¶43 To also repeat, the second question for the reasonably prudent officer at that moment was the likelihood that Bodie believed that he would be arrested by the officer, based on the Indiana warrant, while in the squad car. Put another way, the second question concerned the likelihood that Bodie knew that the officer could not validly arrest him in Wisconsin based on the Indiana warrant. The same mailed notices to Bodie from the Indiana court would almost certainly not inform Bodie that the arrest warrant could not be executed outside Indiana, as

it would be quite unusual and surprising for any court to inform a defendant of that proposition. In addition, a reasonably prudent officer would have no basis to conclude that Bodie had a relatively sophisticated knowledge of Indiana law concerning warrants and their enforcement outside the State of Indiana. Indeed, the parties have not explained to this court the legal basis to conclude that the Indiana arrest warrant could not be validly executed in Wisconsin, but we have made that assumption based on the representations of the parties.

¶44 In sum, the reasonably prudent officer in the circumstances of this officer would reasonably determine that there was a substantial likelihood that Bodie knew of the Indiana arrest warrant and Bodie believed that he was about to be arrested while in the squad car. As a result, the officer was warranted in the belief that his safety was in danger by getting into the squad car with Bodie behind him in the back seat. The protective search was constitutionally permissible.[1]

¶45 Accordingly, I respectfully dissent and would affirm the order of the circuit court that denied Bodie's suppression motion.

---

[1] For the reasons already noted, I do not agree that the points raised in the majority opinion about the arrest warrant, either individually or collectively, lead to the conclusion reached by the majority. As one example, a reasonably prudent officer who is about to get into a confined space (his squad car) with Bodie is not required to believe that any cooperation or congeniality shown by Bodie would continue once Bodie came to believe that he was about to be arrested. *See* Majority, ¶31.

Paragraph 24 of the majority opinion states: "Nor was there any evidence that there was no bullet-proof glass separating the officer from any passengers in the backseat." Regarding the fourth factor about the arrest warrant, for that lack of evidence to be a factor in favor of Bodie's suppression motion, there would need to be a reasonable factual basis to draw the assumption that law enforcement vehicles always have bullet-proof glass separating the front and back seats. However, there is nothing in this record about bullet-proof glass (or its absence), and there is no basis to take judicial notice about bullet-proof glass in squad cars in Dane County.