COURT OF APPEALS
DECISION
DATED AND FILED

December 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2538-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF403

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JAMES D. PATRICK-YANCE,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Affirmed*.

Before Neubauer, P.J., Gundrum, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Following the circuit court's denial of his motion to suppress, James D. Patrick-Yance appeals from the judgment of his conviction for possession of a firearm by an out-of-state felon.  The conviction stems from a traffic stop that Patrick-Yance asserts constituted an unreasonable seizure in violation of the Fourth Amendment.  Based upon our review of the briefs and record, we conclude the seizure was lawful, and thus, the court properly denied Patrick-Yance's suppression motion.  We affirm.

## BACKGROUND

¶2     The arresting officer in this case was the only witness to testify at the hearing on Patrick-Yance's suppression motion.  His relevant testimony is as follows.

¶3     While on nighttime patrol, the officer observed a vehicle being driven "without headlights illuminated."  Instead, the lights that were illuminated were lights that "some people refer to … as parking lights or daytime running lights," which "were significantly more dim" than the headlights of other nearby vehicles.  After stopping the vehicle and making contact with the driver, Patrick-Yance, the officer informed him that his headlights were not on, and Patrick-Yance then "move[d] the switch from the parking lights to the headlight position," thereby illuminating the front of the vehicle with the headlights.

¶4     On cross-examination, when asked if he observed "the daytime running lights … on," the officer responded, "Yes, sir.  I believe they go by a couple different names—what the lights are called."  Focusing again on the naming of the lights as "daytime running lights," counsel again asked if the illumination in the front of the vehicle that the officer had observed was "[f]rom the daytime running lights," to which the officer responded, "Yes, any light would

illuminate." When further asked by counsel, "[a]nd when you indicate that those daytime running lights were operating, you were able to see them as you passed [Patrick-Yance's] vehicle, correct," the officer responded, "I could see that—the running lights [were] on, yes." Counsel then asked, "Could you see any other lights on the front of [Patrick-Yance's] vehicle other than the daytime running lights?" The officer responded, "To my knowledge I don't recall seeing any other lights, no." Counsel further asked the officer if he had any particular training or equipment for testing the level of brightness of the activated lights, and the officer indicated he did not.

¶5    The relevant statute at issue before the circuit court and before us is WIS. STAT. § 347.06(1) (2023-24).[1] This statute states, as relevant:

> [N]o person may operate a vehicle upon a highway during hours of darkness or during a period of limited visibility unless all headlamps, tail lamps, and clearance lamps with which the vehicle is required to be equipped are lighted. Parking lamps … may not be used for this purpose. This subsection does not apply if lamps that are *automatically activated* whenever the vehicle is started are in use, if the headlamps are of sufficient intensity to satisfy the requirements for daytime running lamps under 49 CFR [§] 571.108, S7.10.13.

(Emphasis added.)

¶6    Patrick-Yance argued to the circuit court that the exception of the last sentence of this statutory provision applied, asserting that the officer had observed the daytime running lamps activated when he stopped him for not having his headlights on. The court disagreed that the last sentence applied, explaining, "I don't think there's been [a] record that these are automatically activated." After

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

determining that the last sentence did not apply, the court denied the suppression motion, concluding that the officer's stop of Patrick-Yance was lawful because it was based upon the officer's reasonable suspicion that Patrick-Yance was unlawfully operating his vehicle due to not having his headlights on while driving during hours of darkness.

¶7     Patrick-Yance pled guilty to the firearm count, with other charges being dismissed but read in.  He was subsequently sentenced, and he now appeals.

## DISCUSSION

¶8     "[W]hether a traffic stop is reasonable is a question of constitutional fact" that is determined based on the totality of the circumstances.  *State v. Post*, 2007 WI 60, ¶¶8, 13, 301 Wis. 2d 1, 733 N.W.2d 634.  Where, as here, the relevant facts are undisputed, we review independently the application of those facts to constitutional principles.  *State v. Olson*, 2001 WI App 284, ¶6, 249 Wis. 2d 391, 639 N.W.2d 207.  An investigatory traffic stop is justified by reasonable suspicion if the "officer possess[es] specific and articulable facts that warrant a reasonable belief that [unlawful] activity is afoot."  *State v. Young*, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729.  Reasonable suspicion is an objective inquiry, decided by what a reasonable officer would reasonably believe under the circumstances.  *See State v. Nesbit*, 2017 WI App 58, ¶6, 378 Wis. 2d 65, 902 N.W.2d 266.  "[P]olice officers," however, "are not required to rule out the possibility of innocent behavior before initiating a brief stop."  *Young*, 294 Wis. 2d 1, ¶21 (citation omitted).

¶9     Patrick-Yance contends the traffic stop here was unlawful because the officer observed "only that his car lights were dimmer than that of the other

4

vehicles around him." This is an inaccurate representation of the testimony and findings from the suppression hearing.

¶10 It is undisputed that the evidence presented at the hearing showed that Patrick-Yance was operating his vehicle without his headlights activated. The circuit court so found, and Patrick-Yance develops no challenge to this factual finding. The officer's observations in this regard provided not only reasonable suspicion but also probable cause to believe Patrick-Yance was operating his vehicle in violation of WIS. STAT. § 347.06(1), thereby justifying the traffic stop.

¶11 The officer testified that the lights on Patrick-Yance's vehicle that were illuminated were "parking lights or daytime running lights." Following Patrick-Yance's counsel's repeated characterization of the lights that were illuminated as "daytime running lights," the officer appeared to acquiesce in that characterization and also indicated he could observe no other lights activated on the vehicle other than those that had been illuminated. Not making a clear, specific finding on the topic, the circuit court referred to the activated lights as "running lights … or parking lights."

¶12 The second sentence of WIS. STAT. § 347.06(1) makes clear that if the lights that were in fact activated on Patrick-Yance's vehicle were "[p]arking lamps," such lights "may not be used" in lieu of "headlamps"—i.e., a driver is not absolved of liability for driving with parking lamps on instead of headlights. The last sentence of subsec. (1), however, does provide an exception to liability for driving without headlights on "if" the activated lamps are ones "that are automatically activated whenever the vehicle is started," *and* "if" the lamps are "of sufficient intensity to satisfy the requirements for daytime running lamps under 49

CFR [§] 571.108, S7.10.13." Sec. 347.06(1). In that circumstance, subsec. (1) "does not apply." *See id.*

¶13   In his appellate briefing, Patrick-Yance attempts to focus all of our attention on the second "if," but it is the first "if" that is key here. The exception to liability of the last sentence in subsec. (1) is only applicable "if" the lights that were illuminated on Patrick-Yance's vehicle were ones "that are automatically activated whenever the vehicle is started." *See* WIS. STAT. § 347.06(1). As the circuit court pointed out, however, there was no evidence presented at the hearing as to whether the illuminated lamps were ones that were "automatically activated."

¶14   But, even if evidence had been presented that the officer learned upon communicating with Patrick-Yance at his window that the activated lamps were in fact daytime running lamps instead of parking lamps, the officer's initial traffic stop and engagement with Patrick-Yance would nonetheless be lawful. That is because at the time the officer effectuated the stop, he knew the headlights were not activated, contrary to the requirements of the statute. He further appeared to understand that the lights that were activated were either parking lamps or daytime running lamps. As indicated, if they were parking lamps, Patrick-Yance would not be absolved of liability for not having his headlights on. And, if they were daytime running lamps, they could have been ones that were either automatically activated or manually activated. There was no evidence presented to suggest the officer would have had any reason to know whether the running lamps were automatically activated or manually activated before he effectuated the stop and made contact with Patrick-Yance at his window. To the extent there was any evidence presented as to how the running lamps were activated, the officer testified that when he "informed [Patrick-Yance] that his

headlights were not on," Patrick-Yance manually "move[d] the switch" from the activated parking (or running) lamps to the headlights.[2]

¶15    The law did not require the officer here to rule out a potentially innocent scenario as to Patrick-Yance's vehicle lighting—that perhaps the illuminated lamps were daytime running lamps that were automatically activated and sufficiently bright—when a scenario consistent with reasonable suspicion, probable cause, and ultimately guilt was also present.[3] *See* ***Young***, 294 Wis. 2d 1, ¶21.  As the circuit court observed, "How's [the officer] gonna know which … vehicles have automatic lights and which don't?"  Indeed, it is well established that "[t]he essence of good police work under these circumstances is to briefly stop the individual in order to maintain the status quo temporarily while obtaining more information."  ***State v. Waldner***, 206 Wis. 2d 51, 61, 556 N.W.2d 681 (1996).

> [P]olice officers are not required to rule out the possibility of innocent behavior before initiating a brief stop.  In this regard, we pointed out that the suspects in ***Terry*** [***v. Ohio***, 392 U.S. 1 (1968)] "might have been casing the store for a robbery, or they might have been window-shopping or impatiently waiting for a friend in the store."  We noted that suspicious conduct by its very nature is ambiguous, and the princip[al] function of the investigative stop is to quickly resolve that ambiguity.  Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers

---

[2] And, even if the lamps were automatically activated daytime running lights, Patrick-Yance still would not be absolved of liability unless they were sufficiently bright, per the statutory standard.

[3] Furthermore, while the issue has not been raised or argued before us, and we do not decide it, it may well be that the last-sentence exception of WIS. STAT. § 347.06(1) is an affirmative defense that Patrick-Yance would have to raise and meet the burden of to absolve himself of liability for failing to use his headlights.

have the right to temporarily detain the individual for the purpose of inquiry.

*State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990) (citations omitted).

¶16 Based on the foregoing, we conclude the officer lawfully conducted the traffic stop on the basis that he had, at a minimum, reasonable suspicion to believe Patrick-Yance was operating his vehicle in violation of Wis. Stat. § 347.06(1).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.