**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 23, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2025AP684-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2012CT1185**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOSEPH M. HEROFF,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed*.

¶1    GUNDRUM, J.[1]  Joseph M. Heroff appeals from a judgment entered on his no contest plea convicting him of operating a motor vehicle while

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

intoxicated (OWI), fourth offense. He asserts the circuit court erred in denying his motion to suppress evidence derived from the traffic stop, which led to the OWI charge. For the following reasons, we affirm.

## BACKGROUND

¶2 At around 1:35 a.m., a city of Oshkosh police officer performed a traffic stop on Heroff. Heroff filed a motion to suppress the evidence derived from that stop, asserting the officer lacked reasonable suspicion to lawfully stop him. The relevant evidence from the evidentiary hearing on that motion is as follows.

¶3 The officer testified that when he observed Heroff's vehicle, the tint on its windows was "darker than [on] other vehicles [he] saw on the road." Even though he agreed he was able to "see [through the rear window] something dangling from the ceiling" of Heroff's vehicle, the officer stated that it was "almost impossible to see in/through" the windows, and because of this, the officer believed the tint exceeded the level permitted by law, prompting the officer to conduct the traffic stop. Through the officer, the State also entered into evidence three photos of the vehicle that were taken in the daytime, hours after the traffic stop.

¶4 The circuit court denied the suppression motion, stating that

> based upon the totality of the circumstances the question becomes, would a reasonable officer in this officer's position think that there's criminal activity afoot? And the essence of good police work is seeing all of this, making a decision, and further investigating it.
>
> The officer doesn't have to know that it's over 35% or 50%. It's just, is there a reasonable suspicion that it might be?

2

¶5 Heroff appeals.

## DISCUSSION

¶6 Heroff asserts the circuit court erred in denying his suppression motion because the officer "could not establish reasonable suspicion" to perform the traffic stop as he "had insufficient experience regarding what amount of tint was too dark to meet the statute's requirements." We conclude the court did not err.

¶7 "[R]easonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops." *State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143. "Reasonable suspicion is 'a low bar.'" *State v. Nimmer*, 2022 WI 47, ¶25, 402 Wis. 2d 416, 975 N.W.2d 598 (citation omitted). It is an objective inquiry, decided by what a reasonable officer would reasonably believe under the circumstances. *See State v. Nesbit*, 2017 WI App 58, ¶6, 378 Wis. 2d 65, 902 N.W.2d 266. Taking "everything observed by and known to the [officer]," we "determine whether the officer[] had 'a particularized and objective basis' to reasonably suspect" the defendant of unlawful activity. *Nimmer*, 402 Wis. 2d 416, ¶26 (citations omitted).

¶8 The officer must possess "specific and articulable facts which, taken together with rational inferences from those facts," warrant a reasonable belief that the person being stopped "has committed, was committing, or is about to commit" an offense. *State v. Post*, 2007 WI 60, ¶¶10, 13, 301 Wis. 2d 1, 733 N.W.2d 634. While a mere hunch is insufficient, "police officers are not required to rule out the possibility of innocent behavior before initiating a brief stop." *State v. Young*, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729 (quoting *State v. Anderson*, 155 Wis. 2d 77, 84, 454 N.W.2d 763 (1990)). Our supreme court has explained:

> [S]uspicious conduct by its very nature is ambiguous, and the [principal] function of the investigative stop is to quickly resolve that ambiguity. Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.

*Young*, 294 Wis. 2d 1, ¶21 (alterations in original) (quoting *Anderson*, 155 Wis. 2d at 84). Indeed, "[i]t has been termed 'the essence of good police work' to briefly stop a suspicious individual 'in order to ... maintain the status quo momentarily while obtaining more information.'" *State v. Williamson*, 58 Wis. 2d 514, 518, 206 N.W.2d 613 (1973) (citing *State v. Chambers*, 55 Wis. 2d 289, 294, 198 N.W.2d 377 (1972)).

¶9 "The question of whether a traffic stop is reasonable is a question of constitutional fact," which "is a mixed question of law and fact to which we apply a two-step standard of review." *Post*, 301 Wis. 2d 1, ¶8. First, "[w]e review the circuit court's findings of historical fact under the clearly erroneous standard, and [second,] we review independently the application of those facts to constitutional principles." *Id.*

¶10 We have previously summarized the relevant window-tinting law as "[r]ear window tinting is permitted only if the window allows at least 35% of light to pass through …."[2] *State v. Conaway*, 2010 WI App 7, ¶3, 323 Wis. 2d 250, 779 N.W.2d 182.

---

[2] WISCONSIN ADMIN. CODE § TRANS 305.32(5)(b) provides:

(continued)

¶11   Heroff puts all his eggs in the basket of relying on *Conaway*, arguing that the record in the present case does not show that the officer had sufficient expertise to determine whether a particular tinted window would meet the 35% threshold.   But, *Conaway* does not carry the day for Heroff because the facts presented to the circuit court in that case were not as strong as those presented to the court here.

¶12   Significantly, the evidence from the officer who performed the traffic stop on the vehicle in *Conaway* was no stronger than that he performed the stop because the vehicle "appeared to [have] dark window tint." *Id.*, ¶2.  Such a thin evidentiary basis would, of course, cry out for more factual support, as it would be impossible for the circuit court to have any idea if a window "appear[ing]" to have "dark" tint was anywhere near too "dark," meaning that it did not permit "at least 35% of light to pass through." *See id.*, ¶3.

¶13   By contrast, in the case now before us, the officer testified that although he was able to discern that "something [was] dangling from the ceiling" inside the vehicle, the windows were so darkly tinted that it was "almost impossible to see in/through" the windows.  The extreme darkness of the windows is obvious in the photographs of the vehicle that were admitted into evidence at the suppression hearing, which photographs are consistent with the officer's testimony

---

Tinting of the rear window is permitted as follows: … 2. The window is tinted by the application of tinting film to the inside of the glazing provided that the combination of the glazing and tinting film permits passage through the window of at least 35% of the visible light striking the window.

that the circuit court found credible.[3] While the court was itself unlikely an expert in gauging percentage of window tint, the fact that the rear window was "almost impossible to see in/through," as the officer testified and as confirmed by the admitted photograph, provides reasonable suspicion to believe the window tinting was in violation of the law. Even a layperson with no window-tint expertise could reasonably suspect that if it is possible for window tinting to be too extreme to be legal, this certainly must be it, as it is difficult to fathom tint much more extreme than it was on Heroff's vehicle.[4]

¶14 The *Conaway* court, in "[f]ocusing solely on the 35%-light-pass-through requirement," stated, "[I]t would be enough [for reasonable suspicion], *for example*, if an officer testifies that he or she is familiar with how dark a minimally complying window appears and that the suspect window appeared similarly dark or darker, taking into account the circumstances of the viewing." *Id.* ¶7 (emphasis added). But, as highlighted, we stated that this is only one example of how an officer might demonstrate to the circuit court that his/her suspicion that a window violated the 35% threshold was reasonable. Here, the officer's testimony was more than just a statement that the window "appeared" to have "dark" tint. In this case, the officer demonstrated that his suspicion was reasonable by testifying and showing photographic evidence to confirm that it was "almost impossible to see in/through" the rear window. To conclude otherwise based upon the facts before the court, would be to significantly elevate form over substance. The officer's

---

[3] While the circuit court did not make an explicit credibility finding, it did so implicitly. *See State v. Quarzenski*, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844 ("If the court does not make express [credibility] findings" we will generally "assume it made implicit findings on a witness's credibility when analyzing the evidence.").

[4] We have attached a photograph of the rear window to this decision.

suspicion here was based on more than a "hunch"; it was based on specific, articulable facts related to his almost complete inability to see through the rear window. *See **Post***, 301 Wis. 2d 1, ¶¶10, 13. Even without testimony from the officer as to his experience and expertise in gauging the level of tint on a window, the court correctly concluded that the officer's suspicion that the tinting in this case exceeded the legal limit was reasonable.

  *By the Court.*—Judgment affirmed.

  This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.



40-1